**Pat S. HOLLOWAY, Plaintiff-Appellant,**

**v.**

**Judge Dee Brown WALKER, et al., Defendants-Appellees.**

**No. 85–1289.**

United States Court of Appeals, Fifth Circuit.

March 19, 1986.

---

J. Bruce Bennett, Reynolds, Allen & Cook, Joe H. Reynolds, Houston, Tex., for plaintiff-appellant.

Robert H. Frost, Thomas V. Murto, III, Dallas, Tex., for defendants-appellees Browning, et al.

Bruce W. Claycombe, Kenneth L. King, Dallas, Tex., for Judge Dee Brown Walker.

Dorothea L. Vidal, Robert Goldberg, Roderic C. Steakley, Dallas, Tex., for APP defendants-appellees.

R. Brent Cooper, Jim E. Cowles, Michael W. Huddleston, Judith H. Winston, Dallas, Tex., for Kelsoe.

Edwin E. Wright, III, Dallas, Tex., James Kronzer, Houston, Tex., for Ayres.

J.R. Hurt, pro se.

Whitley R. Sessions, pro se.

Earl Luna, Mary Milford, Dallas, Tex., for Wright.

Before CLARK, Chief Judge, POLITZ, and WILLIAMS, Circuit Judges.

CLARK, Chief Judge:

On November 18, 1982, Pat S. Holloway, Humble Exploration Company, Inc., and Sterling Pipeline Company (hereinafter "Humble and Holloway" or "plaintiffs") brought this action pursuant to 42 U.S.C. § 1983 against Judge Dee Brown Walker, the Brownings (Jane H. Browning, Katherine Louise Browning Cook, Averille Adams Browning, William Webb Browning, III, Winifred Fallon Browning, Robert Holland Browning, and others), G.H. Kelsoe, Jr. and R. Jack Ayres, Jr. (attorneys for the Brownings) and John Wright, Jr., who had served as a receiver appointed by Judge Walker (hereinafter collectively "defendants"). Holloway and Humble alleged that the appellees had conspired to control the outcome of a state court lawsuit over which Judge Walker presided and thereby deprive plaintiffs of their property without due process of law. The plaintiffs also asserted pendent state law claims. The

district court held that the acts alleged by plaintiffs did not violate the due process clause of the Fourteenth Amendment and dismissed the § 1983 action and the pendent state claims. We affirm.

## I. *Facts*

The facts pertinent to this case were recited in an earlier opinion of this court, *Holloway v. Walker,* 765 F.2d 517, 519–21, *reh'g en banc denied,* 773 F.2d 1236 (5th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 605, 88 L.Ed.2d 583 (1985), and we add only the material in brackets:

"The complicated history of this case begins on September 12, 1979 when the Brownings ... filed suit against Humble, Holloway and others in the 193rd Judicial District Court of Dallas County, Texas, seeking, as the alleged equitable owners of substantially all of the assets of Humble and Holloway, the imposition of a constructive trust on Humble's and Holloway's assets, actual and exemplary damages, and the appointment of an interim receiver to manage the disputed assets. Sterling Pipeline Company was later added to the case. (The lawsuit is hereinafter referred to as the '1979 case'). On November 19, 1979, Humble and Holloway filed Chapter 11 voluntary bankruptcy petitions and removed the 1979 case to the United States Bankruptcy Court for the Northern District of Texas, pursuant to 28 U.S.C. § 1478(a).

"The parties entered a 'Stipulation and Agreement on Manner in Which Controversy Shall Be Heard, Determined and Liquidated,' which was approved by the bankruptcy court and annexed to the court's January 18, 1980 'Order Remanding Causes of Action and Modifying Automatic Stay.' The remand order remanded the 1979 case to the 193rd Judicial District Court pursuant to the terms of the stipulation and agreement, and modified the automatic stay to permit trial of the case upon remand, subject to the terms of the stipulation and agreement. The stipulation and agreement provided, among other things, that upon remand of the case the parties would request the presiding judge of the

administrative judicial district to assign a visiting or retired state judge to hear the consolidated cases.

"The case was remanded and the presiding judge assigned it to a retired state judge who ordered enforcement of a prior settlement agreement. In 1981, the Court of Appeals for the Fifth Supreme Judicial District of Texas (the 'Texas court of appeals') reversed the order enforcing the settlement agreement and remanded the case for a jury trial. The Texas Supreme Court found no reversible error. Upon remand from the state appellate courts, the 1979 case was assigned to a different retired state judge who entered an order nullifying the prior settlement agreement.

"On May 26, 1982, a group of investors sued Holloway and Humble in the 162nd Judicial District Court of Dallas County, Texas, Judge Dee Brown Walker presiding, claiming that Humble had wrongfully shut-in over 150 oil and gas wells jointly owned by the investors and Humble. This suit is alleged by Holloway to have been brought pursuant to the conspiracy, solely for the purpose of creating a case before Walker into which the 1979 action could be consolidated, in violation of the agreement that restricted the judge who could hear the 1979 action to one who had retired or was visiting the judicial district. The investors sought the appointment of a receiver over Humble's assets. (The case is hereinafter referred to as the '1982 case'). The Brownings were named as defendants in the 1982 case because of their claim to ownership of Humble's and Holloway's assets. The 1982 case was removed to the bankruptcy court and remanded to Judge Walker's court on the same day.

"On May 28, 1982, Judge Walker appointed a receiver in the 1982 case over Humble's and Holloway's assets. Thereafter 'ensued a somewhat dizzying sequence of state court orders,' most of which were issued by Judge Walker, and recounted in *Browning v. Navarro*, 37 B.R. 201, 205–06 (D.C.N.D.Tex.1983), which resulted in the transfer and consolidation of the 1979 case into the 1982 case before Judge Walker in the 162nd Judicial District Court. On June 24, 1982, the May 28, 1982 receivership order having been vacated by the state court of appeals, Judge Walker granted the Brownings' request for a separate and expedited trial of the 1979 case. On August 26, 1982, after a month-long trial, judgment was entered in the 1979 case for the Brownings, imposing a constructive trust on Humble's and Holloway's assets and awarding the Brownings actual damages of $72,000,000 and exemplary damages of $10,000,000.

"On November 18, 1982, Humble and Holloway brought the action in which the present appeal is taken [the '§ 1983 action' or the 'civil rights case'] against Judge Walker, the Brownings, legal counsel for the Brownings and many others, alleging that all the defendants had conspired to violate Humble's and Holloway's civil rights in the 1979 case. The complaint alleges that Walker and the other defendants conspired to seize control of Humble through the abuse of Walker's judicial office. Holloway contends that pursuant to the conspiracy Walker arranged to have the 1982 case brought before his court contrary to the usual procedure for assigning cases, that Walker thereafter arranged to have the 1979 and the 1982 cases consolidated in his court, that he imposed receiverships on Humble's and Holloway's assets, defied a mandamus order of the Texas Court of Appeals to refrain from interfering in Humble's business, appointed an incompetent receiver for Humble, dismissed many Humble personnel, posted guards at Humble's headquarters to seize the building, and, in a hotel near the courthouse, conducted meetings regarding Humble's business, all in furtherance of the conspiracy. Holloway contends extensive damage was done to him and Humble through Walker's pernicious actions....

"Holloway's complaint requests damages as well as equitable and declaratory relief under section 1983. In addition, Holloway requests similar relief under Texas state law. [Judge Walker moved to dismiss the civil rights claim against him based on the

doctrine of judicial immunity. The district court denied his motion and Judge Walker appealed. This court held that Walker was entitled to the benefit of judicial immunity and dismissed all damage and state law claims against him. *Holloway v. Walker, supra,* 765 F.2d at 526. Therefore, only the equitable and declaratory claims remain as to Walker].

"After Humble and Holloway filed the civil rights case they perfected an appeal from the judgment in the 1979 case to the Texas court of appeals. The Texas court of appeals was the appropriate Texas appellate court to hear the appeal of a case from Judge Walker's court. However, neither Humble nor Holloway posted a supersedeas bond to stay execution of the judgment in the 1979 case pending their appeal.

"The Brownings then brought an action in the United States District Court (the 'turnover action') to obtain possession of Humble's and Holloway's assets which, according to the judgment in the 1979 case, were being held for their benefit. Humble, Holloway and their trustee, Dan Navarro, refused to turn the assets over to the Brownings. They argued that the proceedings before Judge Walker, an active judge, were void because the 1979 case was tried in contravention of the bankruptcy court's original remand order. The United States District Court granted a summary judgment in favor of Navarro and held that the trial of the 1979 case before Judge Walker was void. This court, however, reversed the district court's determinations and held that the trial before Judge Walker was not void because the remand order had been satisfied. *Browning v. Navarro,* 743 F.2d 1069 (5th Cir.1984).

"The appeal of the 1979 case was pending in the Texas court of appeals while the turnover action was being litigated in the United States District Court. The Texas court of appeals, however, believed that the turnover action constituted a collateral attack on Judge Walker's judgment in the 1979 case. Therefore, the Texas court of appeals dismissed Humble's and Holloway's appeal because it did not believe

Humble and Holloway were entitled to two appeals from the judgment in the 1979 case. [After the reversal of the district court's decision in the turnover action, the Texas court vacated its prior order of dismissal. However, the appellate court, sitting *en banc,* later reinstated the order of dismissal. *Humble Exploration Co. v. Browning,* 690 S.W.2d 321 (Tex.Ct.App. 1985) (en banc), *reinstating* 677 S.W.2d 111 (1984). With the Texas Supreme Court's denial of Humble's and Holloway's application for writ of error, it appears that appellees have no further recourse in the state courts].

"[The various defendants in the civil rights case moved for summary judgment. On March 11, 1985, the district court granted summary judgment for defendants with respect to Humble's and Holloway's claims of deprivation of procedural due process. The court relied on *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). However, the district court denied summary judgment for defendants with respect to the claims of deprivation of substantive due process. The court concluded that the right to a fair trial was a substantive due process right and therefore did not fall within *Parratt/Hudson.* It also found that a genuine issue of material fact existed as to whether defendants had violated this right through a conspiracy with Walker. However, on March 28, 1985, the district court found that with respect to certain of the defendants, the 'Browning Interests,' there was no genuine issue of material fact that the Browning interests defendants participated in the alleged conspiracy and therefore granted summary judgment for these defendants on all the federal claims. Finally, on April 18, 1985, the court reversed its earlier ruling on the substantive due process issue. It concluded that the alleged conspiracy would violate no substantive due process right. The court granted summary judgment for all defendants, dismissing plaintiffs' § 1983 claims with prejudice and dismissing the pendent state law claims without prejudice.

Humble and Holloway appeal from all three adverse rulings of the district court]."

## II. *Parratt/Hudson*

■ The principal issue presented in this appeal is whether the § 1983 claim advanced by plaintiffs Humble and Holloway, i.e., that they were deprived of a fair trial by virtue of a conspiracy between Judge Walker and the opposing litigants, is barred by the Supreme Court's holdings in *Parratt v. Taylor* and *Hudson v. Palmer*, *supra*. In *Parratt* a Nebraska state prisoner brought a § 1983 action to recover the value of a hobby kit negligently lost by a prison employee. He claimed that he had been deprived of his property "without due process of law." The Supreme Court rejected this claim. *Parratt*, 451 U.S. at 543, 101 S.Ct. at 1917. The Court reasoned that it was not practicable for the state to provide a hearing *before* a random and unauthorized deprivation of property by a state employee, since the state could not tell when such deprivations might occur. Thus, postdeprivation tort remedy provided by the state constituted all the process that was due.[1] *Id.* at 541–44, 101 S.Ct. at 1916–17. The Court emphasized that there was no allegation that the deprivation of property resulted from constitutionally inadequate state procedures. *Id.* at 543, 101 S.Ct. at 1917. Finally, the Court noted that to hold that "the conduct of the state officials in this case constituted a violation of the Fourteenth Amendment would almost necessarily result in turning every alleged injury which may have been inflicted by a state official acting under 'color of law' into a violation of the Fourteenth Amendment cognizable under § 1983." *Id.* at 544, 101 S.Ct. at 1917; *see also id.* at 544, 101 S.Ct. at 1922 n. 13 (Powell, J., concurring in the result) ("[i]t is not in the interest of claimants or of society for disputes of this kind to be resolved by litigation that may take years, particularly in an overburdened federal system that never was designed to be utilized in this way").

In *Hudson*, the *Parratt* rule was extended to a situation where the alleged deprivation of property was intentional rather than negligent. Reasoning that unauthorized intentional wrongs were no more predictable, and perhaps less so, than negligent behavior, the Court held that due process was not violated when a prison employee allegedly seized noncontraband property from a prisoner's cell during a "shakedown" search. *Hudson, supra*, 468 U.S. at ——, 104 S.Ct. at 3203–05. The Court noted that the prisoner could obtain adequate compensation for his loss through state law tort remedies. *Id.* at ——, 104 S.Ct. at 3204.

The district court in the present case held that the *Parratt/Hudson* rule barred the plaintiffs' action because the alleged conspiracy by the state court judge to deprive plaintiffs of their property constituted a random and unauthorized act by a state employee. The opportunity to appeal from the judgment was an adequate postdeprivation remedy; thus plaintiffs, though deprived of their property, were not deprived of due process.

Plaintiffs, however, seek to distinguish *Parratt/Hudson* on two grounds. First, they argue that, unlike the situation in *Parratt* and *Hudson*, the deprivation in this case was pursuant to an established state procedure, rather than simply the result of a random and unauthorized act. Secondly, they contend that the actions of defendants deprived them not only of a procedural due process right, as was the case in *Parratt* and *Hudson*, but also of a substantive due process right to a fair trial. We discuss these contentions separately.

### A. *Established State Procedure*

Relying on *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–36, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982), plaintiffs argue that the *Parratt/Hudson* rule does not apply where a plaintiff is deprived of property pursuant to an established state proce-

---

1. In *Daniels v. Williams*, —— U.S. ——, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986), the Court concluded that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property."

dure. In *Logan*, the plaintiff brought a discrimination complaint before the Illinois Fair Employment Practices Commission within the period provided for by statute. The Commission was required by state statute to act on the complaint within 120 days, but it inadvertently failed to do so. The Illinois Supreme Court held that the Commission's failure to act within the statutory period deprived it of jurisdiction to hear the complaint at all. *Id.* at 426–28, 102 S.Ct. at 1152–53. Thus, Logan's cause of action was extinguished solely due to the inaction of the Commission over which Logan had no control. In holding that Logan had been deprived of his cause of action without due process, the Court distinguished *Parratt:*

> In *Parratt*, the Court emphasized that it was dealing with "a tortious loss of ... property as a result of a random and unauthorized act by a state employee ... not a result of some established state procedure." Here, in contrast, it is the state system itself that destroys a complainant's property interest, by operation of law, whenever the Commission fails to convene a timely conference—whether the Commission's action is taken through negligence, maliciousness, or otherwise. *Parratt* was not designed to reach such a situation. Unlike the complainant in *Parratt*, Logan is challenging not the Commission's error, but the "established state procedure" that destroys his entitlement without according him proper procedural safeguards.

*Id.* at 435–36, 102 S.Ct. at 1158 (citations omitted).

Plaintiffs argue that because their property was taken through a judicial proceeding, which obviously is an established state procedure, the *Logan* exception to *Parratt* applies. However, plaintiffs do not challenge the validity of the established procedure, as did the plaintiff in *Logan*, but the alleged illegal and unauthorized acts of Judge Walker. While in *Logan* it was possible for the state to remedy the defective procedure so as to prevent the challenged deprivation of property, in the case at bar there is no practical way for Texas to prevent a biased or corrupt judge from depriving a litigant of property in the first instance.

Of course, it is possible for a procedure for choosing judges to be constitutionally inadequate because it makes bias or corruption likely. For example, in *Ward v. Village of Monroeville*, 409 U.S. 57, 60, 93 S.Ct. 80, 83, 34 L.Ed.2d 267 (1972), the Court held that a statute authorizing mayors to act as judges in cases involving certain ordinance and traffic infractions violated due process because the fines collected in those cases made up a substantial portion of the village income and "the mayor's executive responsibilities for village finances may make him partisan to maintain the high level of contribution from the mayor's court." It is not contended here that Texas procedure is inadequate in this respect. Indeed, plaintiffs do not seriously challenge the constitutional adequacy of any part of the Texas judicial system. Plaintiffs do contend that "the Texas system can be abused so as to permit the arbitrary and capricious conduct of one of its judicial officials, through the rendition of a final judgment, to destroy the due process and property rights of a person appearing before him." However, no judicial system offers any guarantee, other than the postdeprivation right of appeal, that an individual judge will not act arbitrarily or corruptly.

The Texas court system provided an adequate postdeprivation remedy through the right of appeal to restore any wrongfully taken property to its owner. In the absence of any challenge to the established judicial procedure of Texas or allegation that Judge Walker's conspiratorial acts "represented official policy," *see Augustine v. Doe*, 740 F.2d 322, 328–29 (5th Cir. 1984), the *Logan* exception is inapplicable to this case.

Furthermore, plaintiffs' argument is clearly foreclosed by *Collins v. King*, 743 F.2d 248 (5th Cir.1984), in which this court held that a prisoner's complaint that a member of a disciplinary tribunal was bi-

ased against him did not state a due process claim. The court applied the *Parratt/Hudson* rule, noting that "Collins does not assert that it was part of state procedure to constitute tribunals such as his in such a manner." *Id.* at 254. Similarly, in the present case plaintiffs' complaint of a random instance of a biased tribunal does not state a procedural due process claim under *Parratt/Hudson.*

Plaintiffs rely on *Shelton v. City of College Station,* 754 F.2d 1251 (5th Cir.1985), *vacated and rev'd on other grounds,* 780 F.2d 475 (5th Cir.1986) (en banc), in which the court stated that "the principle established by *Parratt* does not apply when the plaintiff's claim is based either upon deprivation of a liberty interest or (as here) upon the intentional deprivation of a property interest 'pursuant to established state procedure.'" *Id.* at 1257 (citing *McCrae v. Hankins,* 720 F.2d 863, 870 (5th Cir.1983).[2] This statement is not infringed by our holding here. Indeed, it emphasizes what we stress, namely, that the due process challenge must be to the established state procedure itself and not to a random and unauthorized act of a state employee. At any rate, the quoted language from *Shelton* comes within a discussion of a claim of denial of substantive due process, not procedural due process, and thus is of dubious relevance to the issue presented here. *See infra* (discussion of plaintiffs' substantive due process claim).

Finally, we reject plaintiffs' argument that because the operation of Texas procedural rules has deprived them of their right of appeal in state court that they do not have an adequate postdeprivation remedy within the meaning of *Parratt/Hudson.* Nothing in *Parratt* or *Hudson* suggests that a postdeprivation remedy is inadequate merely because it is possible for a litigant to forfeit the remedy by virtue of the operation of reasonable state procedural rules. Plaintiffs do not challenge the constitutionality of the procedural rules themselves.

For the foregoing reasons defendants were entitled to summary judgment on the procedural due process claim.

### B. *Substance or Procedure*

In *Augustine, supra,* 740 F.2d at 327, we held that *Parratt* applies only to asserted violations of procedural due process, not of substantive due process. Emphasizing this holding, plaintiffs argue that the "right to a fair trial" is a substantive due process right and that therefore *Parratt/Hudson* is inapplicable. They argue that a fair trial is "implicit in the concept of ordered liberty," *see Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed.2d 188 (1937), and that a judicial conspiracy to deprive litigants of their property "shocks the conscience," *see Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed.2d 183 (1952).

■ Assuming for the sake of this analysis that plaintiffs established a judicial conspiracy, the resultant shocked conscience cannot displace common sense. That sense dictates that the right to an impartial judge is a matter of procedural, not substantive, due process. *See e.g., Marshall v. Jerrico, Inc.,* 446 U.S. 238, 242, 100 S.Ct. 1610, 1613, 64 L.Ed.2d 182 (1980) ("requirement of neutrality in adjudicative proceedings safeguards the ... concerns of procedural due process"). To hold otherwise would be to fictionalize solely for the purpose of avoiding the application of *Parratt/Hudson* a situation to which *Parratt/Hudson* was clearly meant to apply, i.e., where a plaintiff is deprived of his property by the unexpected, unauthorized act of a state employee. As the district court noted, the effect of accepting plaintiffs' argument would be to hold that although a person fails to state a due process claim by complaining that he was deprived of property without due process (under *Parratt/Hudson* ), he nonetheless states a due process claim by complaining he was not provided due process while being deprived of his

---

**2.** Obviously, *McCrae,* which held that *Parratt* did not apply to intentional deprivations of

property interests, was overruled by the Supreme Court's decision in *Hudson.*

# 1294

property. We cannot undermine *Parratt/Hudson* in this way.

Plaintiffs rely principally on *Ward, supra* at note 1, to substantiate their claim that a biased judge violates substantive due process. Nowhere in *Ward,* however, does the Court state that the right to an impartial tribunal is a substantive right. *Ward* held that it was a constitutional violation to allow mayors to sit as judges in cases where the fines imposed went into the village treasury and that this combination of authorized procedures could not be corrected by a litigant's later opportunity for an impartial adjudication. 409 U.S. at 61–62, 93 S.Ct. at 84. However, this holding merely illustrates the principle, discussed above in connection with procedural due process, that a deprivation pursuant to an established state procedure that is itself constitutionally defective cannot be cured by a postdeprivation remedy. It does not convert procedure into substance.

In *Collins, supra,* 743 at 250, we stated that an allegation of a biased tribunal was clearly a procedural due process complaint. In *Shelton, supra,* 754 F.2d at 1258–59, we treated an allegation of a biased fact-finder as a procedural due process complaint. Nothing in these cases suggests that the issue of the impartiality of a tribunal could be matter of substantive due process.

■ The allegation of a judicial conspiracy does not state a substantive due process claim. Summary judgment was properly entered for defendants on this claim.

### III. *Pendent Claims*

■ Plaintiffs contend that the district court abused its discretion by dismissing the pendent state claims, including claims of negligent and wrongful receivership. However, as the district court pointed out, federal courts strive "to abstain from adjudicating the validity and propriety of the actions of the receiver appointed by a state court." No abuse of discretion by the district court has been shown. *See United*

*Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("if the federal claims are dismissed before trial, even though not unsubstantial in a jurisdictional sense, the state claim should be dismissed as well").

### IV. *Conclusion*

The Constitution of the United States marks the jurisdictional line for this § 1983 action. Plaintiffs level grave charges against Judge Walker and the opposing litigants. Plaintiffs' rights of state court review were lost by a unique, complex mix of events (which plaintiffs played a major part in creating). Nevertheless, these alleged acts of judicial conspiracy and lack of postdeprivation remedy do not amount to a violation of constitutional due process. The district court correctly granted summary judgment for defendants.[3] The district court's dismissal of the § 1983 claims and the pendent state claims is

AFFIRMED.

---

**3.** Our disposition of this case makes it unnecessary to reach plaintiffs' other contentions, including their argument that the district court erred in holding that the summary judgment record fails to demonstrate that the Brownings participated in the alleged conspiracy.