852 F.2d 951
 Harold A. KAUTH, individually and as president and sole
shareholder of Creative Environments, Inc., a
dissolved Illinois corporation,
Plaintiff-Appellant,
v.
HARTFORD INSURANCE COMPANY OF ILLINOIS, et al., Defendants-Appellees.
 No. 86-2953.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 12, 1988.
Decided July 19, 1988.
 
 Armin Johnson, Jr., Mitchell, Williams, Holland & Rux, Chicago, Ill., for plaintiff-appellant.
 Bonnie M. Wheaton, Wylie, Wheaton & Assoc., P.C., Patrick Bond, DuPage County State's Atty. Office, Wheaton, Ill., for defendants-appellees.
 Before WOOD, Jr., FLAUM and KANNE, Circuit Judges.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 Plaintiff Harold Kauth brought suit in federal district court under 42 U.S.C. Sec. 1983, claiming that the defendants deprived him of his property without due process of law in violation of the fourteenth amendment. The district court granted the defendants' motion to dismiss and denied Kauth's motion to reconsider. We affirm in part and reverse in part.
 
 I. FACTUAL BACKGROUND
 
 2
 Kauth and Jack L. Hays executed two notes payable to defendant Center Bank-Glen Ellyn (Center Bank). The notes were secured by the assets of Kauth, Hays, and Creative Environments, Inc., a corporation of which Kauth was the president and sole shareholder. On September 29, 1982, Center Bank filed a complaint against Kauth and Hays in the Circuit Court of Du Page County, Illinois, seeking a judgment of $19,223.36, an amount representing the principal and accrued interest due on the two notes. Center Bank also petitioned the court for a writ of attachment. On September 30, 1982, the court entered an ex parte order of attachment. Pursuant to that order, Center Bank posted an attachment bond for $38,500, twice the amount of the alleged debt.
 
 
 3
 On October 4, 1982, a Du Page County deputy sheriff executed the order of attachment. The deputy seized all of the inventory, equipment, and business records of Kauth, Hays, and Creative Environments, Inc. Defendant Thomas Hengels, a Center Bank vice-president, assisted the deputy.
 
 
 4
 The circuit court conducted a number of hearings regarding Center Bank's action and the attachment. Kauth challenged the attachment at a post-deprivation hearing. The court denied Kauth's motion to quash the order of attachment. On October 25, 1982, however, the court ordered defendant Richard P. Doria, Sheriff of Du Page County, to return Kauth's business records at Kauth's expense.[1] In July 1983, the court granted summary judgment for Center Bank on its underlying claim.
 
 
 5
 On January 23, 1984, the court vacated and quashed the writ of attachment as to Kauth after the court discovered that the supporting affidavit of defendant Janice Kellenberger, a Center Bank vice-president, was not based upon personal knowledge. Nevertheless, the court did not order the sheriff to return the seized property to Kauth.[2] The court apparently reasoned that because the property was jointly owned by Kauth and Hays and the writ of attachment was still valid as to Hays, the property was properly seized to satisfy Hays's debt.
 
 
 6
 On March 5, 1984, the court denied Kauth's motion to reconsider its earlier order granting summary judgment on the underlying claim in favor of Center Bank. At this time, the court also heard argument on and denied various motions to compel the defendants to return Kauth's property. On July 10, 1984, the items seized pursuant to the writ of attachment were turned over to defendant E.G. Hudson (U.K.) Limited (Hudson U.K.)[3] and subsequently sold at auction.
 
 
 7
 Kauth filed an action in federal district court under 42 U.S.C. Sec. 1983, alleging a violation of the due process clause of the fourteenth amendment. In Count I of his second amended complaint, Kauth seeks damages from defendant Hartford Insurance Company of Illinois (Hartford), the surety on the attachment bond. Hartford is a Connecticut corporation with its principal place of business in Illinois.
 
 
 8
 Count II of the complaint is essentially a malicious prosecution action against the sheriff and various other parties. Kauth seeks actual and punitive damages from several defendants who allegedly participated in the attachment, including Doria, Center Bank, Kellenberger, Hengels, Bonnie M. Wheaton, an attorney representing Center Bank, and Wheaton's law firm, Wylie, Wheaton and Associates, P.C. All the defendants named in Count II are Illinois citizens.
 
 
 9
 Finally, Count III alleges that Hudson U.K. knowingly converted Kauth's property when it accepted the goods from Center Bank and sold them at auction. Kauth claims damages of $17,000 for the value of the property, plus interest. Kauth also seeks $25,000 in punitive damages.
 
 
 10
 The district court granted the defendants' motion to dismiss and simultaneously denied Kauth's motion for partial summary judgment as to defendant Doria. Kauth then filed a motion for reconsideration. After hearing oral argument on the motion on November 5, 1987, the district court denied Kauth's motion. The district court found that it did not have subject matter jurisdiction over the case because the allegations in Kauth's complaint did not rise to the level of a federal constitutional violation. We have jurisdiction over this appeal under 28 U.S.C. Sec. 1291 (1982).
 
 II. DISCUSSION
 
 11
 In Count I of his complaint, Kauth seeks to recover damages, under the bond that Center Bank posted, for the wrongful attachment of his property. Kauth's claim of wrongful attachment is based on state law. See Gale v. Transamerica Corp., 65 Ill.App.3d 553, 382 N.E.2d 412, 22 Ill.Dec. 92 (1st Dist.1978); Baird v. Liepelt, 62 Ill.App.2d 154, 210 N.E.2d 1 (2d Dist.1965). Likewise, Kauth's conversion claim in Count III is also purely a matter of state law. See generally de St. Aubin v. Johnson, 151 Ill.App.3d 184, 502 N.E.2d 360, 104 Ill.Dec. 97 (1st Dist.1986); A.T. Kearney, Inc. v. INCA Int'l, Inc., 132 Ill.App.3d 655, 477 N.E.2d 1326, 87 Ill.Dec. 798 (1st Dist.1985). A federal court may exercise pendent jurisdiction over state law claims in an appropriate case. To do so, however, the court must have an independent source of federal subject matter jurisdiction. See United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The district court dismissed Count II of Kauth's complaint because the court found that Kauth's federal constitutional allegations had no legal basis. The court then dismissed Counts I and III for lack of subject matter jurisdiction because the court found that those claims had no independent federal jurisdictional basis. We shall begin our analysis by considering whether Count II provided the court with federal subject matter jurisdiction.
 
 A. Federal Question Jurisdiction
 
 12
 Kauth claims that he was denied his property without due process of law in violation of the fourteenth amendment. Kauth relies on both procedural and substantive due process.[4] At the outset, we will attempt to clarify Kauth's arguments. Kauth does not argue that the Illinois attachment scheme is unconstitutional. Nor does Kauth claim that the sheriff violated his constitutional rights by executing a facially valid writ of attachment, even though the state court later declared the writ void. Instead, Kauth argues that he was denied his property without due process of law when: (1) the sheriff[5] attached property allegedly worth over $100,000, far in excess of the underlying debt; (2) the sheriff attached property that is exempt under Illinois law and refused to comply with the state court's order to return the property to Kauth; (3) the sheriff refused to return the property to Kauth after the state court declared the attachment void; and (4) the sheriff released the property to be sold.
 
 
 13
 In reviewing the court's dismissal of Kauth's constitutional claims, we must presume the truth of Kauth's allegations, along with all reasonable inferences, viewing them in the light most favorable to Kauth. Moon v. Phillips, 854 F.2d 147, 149-50 (7th Cir.1988); Wolfolk v. Rivera, 729 F.2d 1114, 1116 (7th Cir.1984). See Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957).
 
 1. Procedural Due Process
 
 14
 Kauth relies on his right to procedural due process under the fourteenth amendment as a source of federal jurisdiction. The parties do not contest that Kauth was deprived of his property when the sheriff seized his business equipment, furnishings, and records. Nevertheless, even if Kauth was deprived of his property under color of state law, there is no constitutional violation if Kauth received due process. Parratt v. Taylor, 451 U.S. 527, 537, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981).
 
 
 15
 The Illinois attachment statute provides that a person whose property is attached is entitled to a prompt hearing. Ill.Rev.Stat. ch. 110, p 4-137 (1985). In fact, Kauth received several post-deprivation hearings[6] in state court.[7] In addition, Kauth admits that he could have sued the defendants for wrongful attachment or malicious prosecution in Illinois state court, but he chose not to pursue those state remedies. When the state provides adequate post-deprivation remedies, however, due process is satisfied. Parratt, 451 U.S. 527, 101 S.Ct. 1908. Kauth simply cannot refuse to pursue the available state remedies and then come into federal court complaining that he was not afforded due process.[8]
 
 
 16
 Kauth does not claim that the available state remedies are constitutionally inadequate. The Supreme Court has clearly stated that if a state provides an adequate means of redressing a property deprivation, the victim of the deprivation has been accorded due process of law. Daniels v. Williams, 474 U.S. 327, 339-40, 106 S.Ct. 662, 678-79, 88 L.Ed.2d 662 (1986) (Stevens, J., concurring) ("[A] complaint does not state a valid procedural due process objection--and a valid Sec. 1983 claim--if it does not include a challenge to the fundamental fairness of the State's procedures.... [I]f a procedural due process claim lacks a colorable objection to the validity of the State's procedures, no constitutional violation has been alleged.") (footnote omitted); Hudson v. Palmer, 468 U.S. 517, 539, 104 S.Ct. 3194, 3207, 82 L.Ed.2d 393 (1984) (O'Connor, J., concurring) ("in challenging a property deprivation, the claimant must either avail himself of the remedies guaranteed by state law or prove that the available remedies are inadequate"); Parratt, 451 U.S. at 537-44, 101 S.Ct. at 1913-17; Bonner v. Coughlin, 517 F.2d 1311, 1319 (7th Cir.1975) (cited with approval in Parratt, 451 U.S. at 541-42, 101 S.Ct. at 1916), modified en banc, 545 F.2d 565 (7th Cir.1976), cert. denied, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978). Therefore, Kauth has not raised a colorable claim that he was denied procedural due process.
 
 2. Substantive Due Process
 
 17
 Kauth also relies on substantive due process, "an area of the law famous for its controversy, and not known for its simplicity." Schaper v. City of Huntsville, 813 F.2d 709, 716 (5th Cir.1987). Kauth's claim does not fit neatly with most substantive due process claims alleging a deprivation of property. Courts often apply a substantive due process analysis when a plaintiff's property rights are impaired by a statute or regulation, analyzing whether the statute is so unreasonable that it is unconstitutional, regardless of the procedural safeguards that the legislature has provided. See, e.g., Chicago Bd. of Realtors, Inc. v. City of Chicago, 819 F.2d 732, 739-40 (7th Cir.1987). See also Illinois Psychological Ass'n v. Falk, 818 F.2d 1337, 1342 (7th Cir.1987).
 
 
 18
 This case is different. Kauth does not claim that the Illinois attachment statute is unconstitutional. Rather, Kauth argues that the sheriff arbitrarily ignored the Illinois law when he seized property that was worth far more than the alleged debt, including exempt property. In addition, Kauth claims that the state court directly violated established Illinois law when it quashed the attachment as to Kauth, but allowed it to stand as to Hays. Kauth asserts that, even if the sheriff was acting pursuant to a court order in releasing the property for sale, that order had no basis in Illinois law, and thus was an arbitrary and unreasonable act in violation of the due process clause.
 
 
 19
 The Supreme Court has not yet provided clear guidance on whether the arbitrary deprivation of a property interest will implicate substantive due process when the plaintiff does not challenge the constitutionality of the statutory scheme. Most Supreme Court opinions based on substantive due process involve some fundamental right that is catagorized as a liberty interest. See, e.g., Roe v. Wade, 410 U.S. 113, 153, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973). See generally Nahmod, Due Process, State Remedies, and Section 1983, 34 U.Kan.L.Rev. 217, 233 (1985). In contrast, the Supreme Court usually applies procedural due process in cases dealing with a deprivation of property. See, e.g., Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).[9] Nevertheless, the Court has analyzed the deprivation of a property interest as a violation of substantive due process. See Regents of the Univ. of Mich. v. Ewing, 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985); cf. Harrah Indep. School Dist. v. Martin, 440 U.S. 194, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979) (per curiam).
 
 
 20
 Some circuits have interpreted recent cases such as Ewing as an implication by the Supreme Court that state-created property interests can invoke substantive due process concerns. See Schaper, 813 F.2d at 716-17 & n. 8. See also Honore v. Douglas, 833 F.2d 565, 568 (5th Cir.1987); Moore v. Warwick Public School Dist. No. 29, 794 F.2d 322, 328-29 (8th Cir.1986); O'Neal v. City of Hot Springs Nat'l Park, 756 F.2d 61, 62-63 (8th Cir.1985); Barnett v. Housing Auth., 707 F.2d 1571, 1577 (11th Cir.1983). The Supreme Court, however, has not actually held that the mere deprivation of a property interest is sufficient to state a substantive due process claim. In Ewing, for example, a former medical student claimed that the University of Michigan arbitrarily refused to let him retake a crucial examination that he had failed. The Court did not decide whether Ewing had a cognizable substantive due process claim. Rather, the Court held that "even if Ewing's assumed property interest gave rise to a substantive right under the Due Process Clause to continued enrollment free from arbitrary state action, the facts of the record disclose no such action." 474 U.S. at 223, 106 S.Ct. at 512.
 
 
 21
 The Fifth Circuit has recognized that if courts interpret Ewing to hold that the deprivation of a state-created property interest can support a substantive due process claim, that interpretation may effectively overrule established Supreme Court precedent on procedural due process, such as Parratt and Hudson, holding that due process is satisfied when adequate state remedies are available. Schaper, 813 F.2d at 717-18; see Holloway v. Walker, 784 F.2d 1287, 1293-94 (5th Cir.), cert. denied, 479 U.S. 984, 107 S.Ct. 571, 93 L.Ed.2d 576 (1986). If we were to find a cognizable substantive due process claim in the present case, we would encourage litigants to try to circumvent the holdings in Parratt and Hudson by characterizing their claims as implicating substantive, rather than procedural, due process. Schaper, 813 F.2d at 718; Holloway, 784 F.2d at 1293; Monaghan, State Law Wrongs, State Law Remedies, and the Fourteenth Amendment, 86 Colum.L.Rev. 979, 994 (1986).
 
 
 22
 We have indicated in previous opinions that we do not believe that substantive due process protects state-created property rights. See Illinois Psychological Ass'n v. Falk, 818 F.2d 1337, 1342 (7th Cir.1987); Brown v. Brienen, 722 F.2d 360, 367 (7th Cir.1983); id. at 368-69 (Flaum, J., concurring). Other courts have agreed. See McMaster v. Cabinet for Human Resources, 824 F.2d 518, 523 (6th Cir.1987) (Nelson, J., concurring) ("Conspiratorial termination of the supposed 'property interest' in public employment would not constitute a denial of 'substantive due process' under any interpretation of the Fourteenth Amendment with which I am familiar, absent the infringement of some 'fundamental' right that the plaintiffs have failed to mention.") (citing Falk and Brienen ); Mangels v. Pena, 789 F.2d 836, 839 (10th Cir.1986) ("Rights of substantive due process are founded not upon state provisions but upon deeply rooted notions of fundamental personal interests derived from the Constitution.") (citing Ewing ). Certainly the Supreme Court has not yet decided this issue. See Ewing, 474 U.S. at 222-23, 106 S.Ct. at 511-12; Szabo Food Serv., Inc. v. Canteen Corp., 823 F.2d 1073, 1081 (7th Cir.1987). Without the Court's guidance, we will not adopt a characterization of substantive due process that could effectively undermine established Supreme Court precedent requiring plaintiffs complaining of arbitrary deprivations of their property to seek redress through state remedies. See Schaper, 813 F.2d at 718; Holloway, 784 F.2d at 1293-94. We believe this result is in keeping with the Supreme Court's refusal to " 'make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States.' " Parratt, 451 U.S. at 544, 101 S.Ct. at 1917 (quoting Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976)).
 
 
 23
 We have recognized that " 'if substantive constitutional rights are violated, the constitutionally recognized deprivation is complete at the time of the action, irrespective of the procedures available before or after the deprivation.' " Toney-El v. Franzen, 777 F.2d 1224, 1226-27 (7th Cir.1985) (quoting Hicks v. Feeney, 596 F.Supp. 1504, 1512 (D.Del.1984)), cert. denied, 476 U.S. 1178, 106 S.Ct. 2909, 90 L.Ed.2d 994 (1986). Accord Daniels v. Williams, 474 U.S. 327, 338, 106 S.Ct. 662, 678, 88 L.Ed.2d 662 (1986) (Stevens, J., concurring); Patsy v. Board of Regents, 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982). Given the Supreme Court's recent decisions in Parratt and Hudson, however, we believe that in cases where the plaintiff complains that he has been unreasonably deprived of a state-created property interest, without alleging a violation of some other substantive constitutional right or that the available state remedies are inadequate, the plaintiff has not stated a substantive due process claim. See Schaper, 813 F.2d at 718 (plaintiff did not state a substantive due process claim for the deprivation of a state-created property right where the state had provided an adequate post-deprivation hearing and no independent substantive constitutional interest was at stake; to hold otherwise would nullify Parratt and Hudson ); cf. Szabo Food, 823 F.2d at 1081 ("one would think that a claim of unauthorized departure from procedure established by state law is exactly what the state courts are for") (citing Parratt and Hudson ).
 
 
 24
 Kauth has failed to state a cognizable claim that the defendants violated his right to substantive due process. Kauth does not dispute the availability or adequacy of the tort remedies that he could have pursued in an Illinois state court. Therefore, because Kauth's complaint alleges only a due process violation and does not allege that the defendants violated any other substantive provision of the Constitution, we must leave Kauth to his state remedies.
 
 B. Diversity Jurisdiction
 
 25
 Finally, Kauth argues that even if we find that the district court did not have jurisdiction over Count II of his complaint, the court nevertheless had diversity jurisdiction over Count III. In Count III, Kauth asserted a state law claim for approximately $42,000 in damages against Hudson U.K., a British partnership. The district court, however, ruled that it lacked diversity jurisdiction because complete diversity did not exist between Kauth and all the defendants named in the other counts of his complaint.
 
 
 26
 To base a claim on the diversity jurisdiction of the federal courts, there must be complete diversity between all the plaintiffs and all the defendants. Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). Thus, if a plaintiff has alleged state law claims in federal court based on diversity jurisdiction, the plaintiff cannot join other parties that would destroy diversity. See Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 377, 98 S.Ct. 2396, 2404, 57 L.Ed.2d 274 (1978); C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 3567.2, at 149-50 (2d ed. 1984) [hereinafter Wright & Miller]. Nevertheless, "the rule of Strawbridge v. Curtiss does not require dismissal of claims against nondiverse defendants if plaintiff has an independent basis of jurisdiction over them." Wright & Miller, supra, Sec. 3605, at 400 (footnote omitted). Accord Romero v. International Terminal Operating Co., 358 U.S. 354, 381, 79 S.Ct. 468, 485, 3 L.Ed.2d 368 (1959); Brown v. Mine Safety Appliances Co., 753 F.2d 393, 395 (5th Cir.1985); Pacific Mut. Life Ins. Co. v. American Nat'l Bank & Trust Co., 642 F.Supp. 163 (N.D.Ill.1986).
 
 
 27
 In a case factually similar to Kauth's, the United States District Court for the Northern District of Georgia refused to dismiss an action for lack of subject matter jurisdiction. In Baker v. J.C. Penney Co., 496 F.Supp. 922 (N.D.Ga.1980), the plaintiffs sued three individuals under section 1983. In addition, the plaintiffs brought several state law claims against defendant J.C. Penney. J.C. Penney moved to dismiss the claims against it for lack of jurisdiction. The court denied this motion. The court found that the plaintiffs had an independent basis of federal jurisdiction over each of the defendants: federal question jurisdiction supported the plaintiffs' claims under section 1983 and complete diversity existed between the plaintiffs and J.C. Penney to support the state law claims. The court refused to reach the "anomalous result of not allowing a plaintiff to do in one federal suit what he would be entitled to do in two separate federal suits." Id. at 924. The court found that this result was consistent with Supreme Court precedent:
 
 
 28
 This result in no way enlarges the court's diversity jurisdiction nor does it run contrary to the Supreme Court's requirement of complete diversity, for even in Aldinger the Supreme Court declined to place diversity jurisdiction on a procrustean bed and recognized that "[o]ther statutory grants and other alignments of parties and claims might call for a different result."
 
 
 29
 Id. (quoting Aldinger v. Howard, 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976)).
 
 
 30
 We believe the approach of the court in Baker is the correct one. See also Connecticut Nat'l Bank v. Fluor Corp., 808 F.2d 957, 963 (2d Cir.1987) (after district court dismissed federal claims, it should not have also dismissed state law claims because the complaint predicated jurisdiction over those claims on diversity of citizenship as well as on pendent jurisdiction); Continental Assurance Co. v. American Bankshares Corp., 601 F.Supp. 265, 275-76 (E.D.Wis.1984) (after dismissing federal statutory claims, court refused to dismiss separate common law claim that was independently supported by diversity jurisdiction), reconsidered on other grounds, 601 F.Supp. 277 (E.D.Wis.1984); Wright & Miller, supra, Sec. 1659, at 419 ("Subject matter jurisdiction problems do not arise when each of the claims by or against ... joined parties rests on an independent jurisdictional ground.") (footnote omitted). If independent bases of federal jurisdiction support separate claims, a plaintiff should not be required to bring those claims in separate complaints.
 
 
 31
 Thus, we find that the district court erred in ruling that diversity jurisdiction could not support Count III of Kauth's complaint. Kauth's complaint indicates that Hudson U.K. is a British partnership located in West Sussex, England. The citizenship of a partnership, however, is irrelevant. Instead, the court must look to the citizenship of the individual partners. See City of Clinton, Ill. v. Moffitt, 812 F.2d 341, 342 (7th Cir.1987); Stockman v. LaCroix, 790 F.2d 584, 587 (7th Cir.1986). Upon remand, the district court should consider whether Kauth's allegations concerning Hudson U.K.'s citizenship are sufficient to support diversity jurisdiction.
 
 
 32
 Kauth suggests that if the district court has diversity jurisdiction over Count III, the court should also entertain Counts I and II under the doctrine of pendent jurisdiction. This argument lacks merit. When federal jurisdiction is based upon diversity of citizenship, a court cannot extend pendent jurisdiction to claims that would destroy complete diversity. See Kroger, 437 U.S. at 377, 98 S.Ct. at 2404. All the defendants named in Counts I and II are, like Kauth, Illinois citizens. Therefore, these claims would destroy complete diversity and cannot be joined with Count III.
 
 III. CONCLUSION
 
 33
 As the district court found, Kauth has failed to state a claim under the due process clause of the fourteenth amendment. Because no federal constitutional violations are alleged, the district court properly dismissed Counts I and II of Kauth's complaint for lack of subject matter jurisdiction. Separate counts of a complaint, however, can be supported by independent jurisdictional bases. Thus, the district court erred when it ruled that Count III could not be supported by diversity jurisdiction. That portion of Kauth's action is remanded to the district court for further proceedings. Circuit Rule 36 shall not apply upon remand. The parties to this appeal shall bear their own costs.
 
 
 34
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 In Count II of his complaint, Kauth claims that the defendants refused to return his business records in violation of a state court order. At oral argument, however, Kauth's attorney admitted that the court's order stipulated that the records be returned at Kauth's expense. Kauth apparently had never arranged to pick up the records from the warehouse where they were being stored, ostensibly because he could not afford it
 
 
 [2]
 As the district court explained in its memorandum opinion, the court's order was altered to delete the mandate that the sheriff return Kauth's property
 Typewritten in the final paragraph is part of the [state] court's order: "IT IS THEREFORE ORDERED that the Writ of Attachment heretofore issued on September 29, 1982 be and is hereby vacated, quashed and held for naught." This sentence is then continued in unidentified handwriting, changing the period after "naught" to a comma, and adding the words "as to Harold A. Kauth." Although this order contained another typewritten sentence, stating: "IT IS FURTHER ORDERED that the Sheriff of DuPage County deliver the goods attached to Harold A. Kauth within 7 days," this sentence is crossed out, also by unidentified handwriting.
 Record Item 76, at 3.
 
 
 [3]
 Hudson U.K. is a British partnership that was formerly in partnership with Hudsons of England, a United States partnership. (At the time Kauth filed the present action, Hudsons of England no longer existed.) Kauth had entered into a consignment agreement with Hudsons of England permitting him to hold, display, and sell goods manufactured by Hudson U.K. Kauth alleges that among the items seized pursuant to the writ of attachment were goods manufactured by Hudson U.K. but wholly owned by Kauth and goods manufactured by Hudson U.K. but jointly owned by Kauth and Hudsons of England, as well as consigned goods owned by Hudson U.K. Center Bank and Hudson U.K. subsequently entered into an agreement providing that all the goods manufactured by Hudson U.K. would be delivered to Hudson U.K. Thus, Kauth claims that Hudson U.K. knowingly accepted and sold property to which Kauth had a superior right of possession
 
 
 [4]
 In his pleadings and arguments before the district court, it is difficult to discern whether Kauth relied on procedural or substantive due process, or both. The district court only discussed procedural due process in its memorandum opinions. In his brief on appeal, however, Kauth clearly raises both procedural and substantive due process arguments. Because Kauth relied on the due process clause before the district court, we do not believe that Kauth has clearly waived arguments regarding either procedural or substantive due process. See Merrow v. Goldberg, 674 F.Supp. 1130, 1133 n. 1 (D.Vt.1986)
 
 
 [5]
 Although Doria's deputy actually executed the writ of attachment, Kauth maintains that Doria can be held liable because the deputy was merely carrying out the policy of the sheriff. Cf. Monell v. Department of Social Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Kauth also claims that because the sheriff acted in concert with the other defendants named in Count II, those defendants can also be sued in this section 1983 action. We need not consider the merits of these arguments, however, since we find that, regardless, Kauth has failed to state a cognizable due process claim
 
 
 [6]
 Kauth does not claim that he should have received a pre-deprivation hearing. See Parratt, 451 U.S. at 538, 101 S.Ct. at 1914 (Supreme Court has recognized that post-deprivation hearings can satisfy due process)
 
 
 [7]
 It appears that Kauth could have raised some of the objections that he now raises at the post-deprivation hearings. For example, Kauth did get a state court order that the sheriff should return the business records at Kauth's expense. Kauth also could have argued at his initial post-deprivation hearing that the sheriff seized property in excess of the alleged debt. If Kauth had a full and fair opportunity to raise those claims before the state court and chose not to, the doctrines of issue and claim preclusion may prevent him from raising them here. See generally Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); Frier v. City of Vandalia, Ill., 770 F.2d 699, 701 (7th Cir.1985). Nevertheless, we will not base our decision on that ground because Kauth could not have raised all of his claims during the post-deprivation proceedings. For example, Illinois law requires that tort claims of wrongful attachment and malicious prosecution be brought in a separate suit. See Gale v. Transamerica Corp., 65 Ill.App.3d 553, 382 N.E.2d 412, 22 Ill.Dec. 92 (1st Dist.1978)
 
 
 [8]
 We recognize that a plaintiff who brings a section 1983 action is not required to first exhaust his state remedies. Patsy v. Board of Regents, 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982); Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 481, 5 L.Ed.2d 492 (1961). The Supreme Court, however, has held that if adequate state remedies are available to the plaintiff, the plaintiff's right to procedural due process is not violated; therefore, the plaintiff has no grounds for a section 1983 action. See Hudson, 468 U.S. at 532 n. 12, 104 S.Ct. at 3203 n. 12; Parratt, 451 U.S. at 543, 101 S.Ct. at 1916; Wells & Eaton, Substantive Due Process and the Scope of Constitutional Torts, 18 Ga.L.Rev. 201, 211-12 (1984)
 
 
 [9]
 Several commentators have suggested that Parratt and Hudson could appropriately be viewed as substantive due process cases. See Monaghan, State Law Wrongs, State Law Remedies, and the Fourteenth Amendment, 86 Colum.L.Rev. 979, 985-86 (1986); Wells & Eaton, supra, at 218-21; Note, Unauthorized Conduct of State Officials under the Fourteenth Amendment: Hudson v. Palmer and the Resurrection of Dead Doctrines, 85 Colum.L.Rev. 837, 845 n. 63 (1985). Although the plaintiffs in those cases originally alleged both procedural and substantive due process claims, the Supreme Court apparently considered only the procedural due process claims. Therefore, courts view Parratt and Hudson as purely procedural due process decisions. See Monaghan, supra, at 984 & n. 47 (collecting cases); Nahmod, supra, at 236 & n. 90 (collecting cases)