649 A.2d 1356

DAVID RIVKIN, EDWARD RIVKIN, JUDITH RIVKIN, T/A GALAXY MANOR, A NEW JERSEY PARTNERSHIP, PLAINTIFFS–RE-SPONDENTS AND CROSS–APPELLANTS, v. DOVER TOWN-SHIP RENT LEVELING BOARD, DEFENDANT–APPELLANT AND CROSS–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 5, 1994—Decided December 8, 1994.

Before Judges KING, D'ANNUNZIO and EICHEN.

*Courtland T. Babcock,* II, argued the cause for appellant/cross-respondent (*Babcock, Hennes & Bielory,* attorneys; *Mr. Babcock,* on the brief).

*Reuel E. Topas* argued the cause for respondents/cross-appellants (*Levin, Shea, Pfeffer, McMahon* and *Russell,* attorneys; *Mr. Topas,* on the brief).

The opinion of the court was delivered by

D'ANNUNZIO, J.A.D.

The issue is whether defendant deprived plaintiffs of procedural due process, thereby subjecting defendant to liability for compensatory damages and counsel fees.

Galaxy Manor, a partnership, operates a mobile home park in Dover Township. In May 1990, it filed an application for a rent increase with defendant Dover Township Rent Leveling Board (Board or defendant). The application was based on major capital improvements to the park, allegedly in the amount of $59,624.96. The Board conducted hearings and rendered its decision in October 1990, permitting rent increases based on capital improvements in the amount of $20,641.42.

Plaintiffs, the partners in Galaxy, filed this action in lieu of prerogative writs, contending that the defendant's determination was arbitrary and capricious and alleging a violation of their civil rights contrary to 42 *U.S.C.A.* § 1983.[1] The core of plaintiffs' allegations focused on the behavior of Edward Baltarzuk, a member of the Board. Plaintiffs contended that Baltarzuk participated in the hearings with a preconceived bias against their application, behaved as an advocate for the tenants during the hearing, relied on evidence outside the record and poisoned the deliberations of the Board.

In the prerogative writ aspect of plaintiffs' case, the trial court ruled that Baltarzuk had prejudiced plaintiffs. The court set aside the Board's determination, remanded for a new hearing and

---

[1] Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

barred Baltarzuk from participating as a Board member at the new hearing. On remand, the Board allowed an additional $25,-089.67 in qualifying capital improvements.

Based on a finding that Baltarzuk's behavior had violated plaintiffs' civil rights contrary to § 1983, the court awarded counsel fees to plaintiffs pursuant to 42 *U.S.C.A.* § 1988 in the amount of $39,679.55. The court also awarded plaintiffs compensatory damages in the amount of $6,303.34, representing interest on the difference between the initial rent increase and the larger rent increase awarded as a result of the hearing on remand. Defendant appealed, and plaintiffs cross-appealed.

Plaintiffs contended, and the trial court agreed, that Baltarzuk's performance as a Board member deprived them of procedural due process. *See Marshall v. Jerrico, Inc.,* 446 *U.S.* 238, 242, 100 *S.Ct.* 1610, 1613, 64 *L.Ed.*2d 182, 188 (1980) (entitlement to an impartial tribunal is a procedural due process right). We conclude that even if Baltarzuk's behavior deprived plaintiffs of due process, plaintiffs had an adequate postdeprivation remedy under State law and, therefore, § 1983 was not violated.

*Parratt v. Taylor,* 451 *U.S.* 527, 101 *S.Ct.* 1908, 68 *L.Ed.*2d 420 (1981) [2] involved a claim by a Nebraska inmate that prison officials negligently lost a hobby kit he had ordered by mail. Plaintiff contended that he had been deprived of his property without due process of law in violation of § 1983. The district court's judgment in plaintiff's favor was affirmed by the United States Court of Appeals.

The Supreme Court rejected Nebraska's contention that only an intentional deprivation of property would support a § 1983 claim.

---

[2] In *Daniels v. Williams,* 474 *U.S.* 327, 106 *S.Ct.* 662, 88 *L.Ed.*2d 662 (1986), the Supreme Court partially overruled *Parratt* when it held that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty or property." *Id.* at 328, 106 *S.Ct.* at 663, 88 *L.Ed.*2d at 666. *Accord Davidson v. Cannon,* 474 *U.S.* 344, 106 *S.Ct.* 668, 88 *L.Ed.*2d 677 (1986).

The Court focused on whether plaintiff had "suffered a deprivation of property without due process of law. In particular, we must decide whether the tort remedies which the State of Nebraska provides as a means of redress for property deprivations satisfy the requirements of procedural due process." *Id.* at 537, 101 *S.Ct.* at 1914, 68 *L.Ed.*2d at 430.

In resolving this issue, the Court noted that deprivation of a property or liberty interest pursuant to an established state procedure usually has required a predeprivation hearing. *See Fuentes v. Shevin,* 407 *U.S.* 67, 92 *S.Ct.* 1983, 32 *L.Ed.*2d 556 (1972); *Bell v. Burson,* 402 *U.S.* 535, 91 *S.Ct.* 1586, 29 *L.Ed.*2d 90 (1971); *Mullane v. Central Hanover Trust Co.,* 339 *U.S.* 306, 70 *S.Ct.* 652, 94 *L.Ed.* 865 (1950). The Court, however, also observed that in some circumstances the availability of a postdeprivation remedy can satisfy the Due Process Clause. *Parratt, supra,* 451 *U.S.* at 538, 101 *S.Ct.* at 1914, 68 *L.Ed.*2d at 430–31. *See Ewing v. Mytinger & Casselberry, Inc.,* 339 *U.S.* 594, 70 *S.Ct.* 870, 94 *L.Ed.* 1088 (1950) (summary seizure and destruction of drugs); *Fahey v. Mallonee,* 332 *U.S.* 245, 67 *S.Ct.* 1552, 91 *L.Ed.* 2030 (1947) (immediate seizure of property in light of substantial question regarding the competence of a bank's officers); *North America Cold Storage Co. v. Chicago,* 211 *U.S.* 306, 29 *S.Ct.* 101, 53 *L.Ed.* 195 (1908) (seizure and destruction of unwholesome food without a prior hearing). The Court noted that, in these cases, exigency or "the impracticality of providing any meaningful predeprivation process can, when coupled with the availability of some meaningful" postdeprivation review satisfy the requirement of procedural due process. *Parratt, supra,* 451 *U.S.* at 539, 101 *S.Ct.* at 1915, 68 *L.Ed.*2d at 431.

Presaging its ruling on plaintiff-inmate's claim, and in terms peculiarly applicable to the present case, the Court stated:

> The justifications which we have found sufficient to uphold takings of property without any predeprivation process are applicable to a situation such as the present one involving a tortious loss of a prisoner's property as a result of a random and unauthorized act by a state employee. In such a case, the loss is not a result of some established state procedure and the State cannot predict precisely when the

loss will occur. It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place. The loss of property, although attributable to the State as action under "color of law," is in almost all cases beyond the control of the State. Indeed, in most cases it is not only impracticable, but impossible to provide a meaningful hearing before the deprivation. That does not mean, of course, that the State can take property without providing a meaningful postdeprivation hearing. The prior cases which have excused the prior-hearing requirement have rested in part on the availability of some meaningful opportunity subsequent to the initial taking for a determination of rights and liabilities.

[*Id.* at 541, 101 *S.Ct.* at 1916, 68 *L.Ed.*2d at 432.]

Applying those principles, the Court concluded that the inmate did not state a valid claim under § 1983 because the deprivation resulted from an unauthorized failure of corrections officials to follow established state procedure, and Nebraska provided a post-deprivation remedy under its tort claims procedure. *Id.* at 543, 101 *S.Ct.* at 1917, 68 *L.Ed.*2d at 434.

In *Hudson v. Palmer*, 468 *U.S.* 517, 104 *S.Ct.* 3194, 82 *L.Ed.*2d 393 (1984), the Court reaffirmed *Parratt* and extended it to an intentional deprivation of property. The Court stated:

While Parratt is necessarily limited by its facts to negligent deprivations of property, it is evident, as the Court of Appeals recognized, that its reasoning applies as well to intentional deprivations of property. The underlying rationale of Parratt is that when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur. We can discern no logical distinction between negligent and intentional deprivations of property insofar as the 'practicability' of affording predeprivation process is concerned. The state can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct.

[*Id.* at 533, 104 *S.Ct.* at 3203, 82 *L.Ed.*2d at 407.]

The Court refined the application of *Parratt–Hudson* principles in *Zinermon v. Burch*, 494 *U.S.* 113, 110 *S.Ct.* 975, 108 *L.Ed.*2d 100 (1990). Plaintiff, Burch, had executed required documents admitting him to a Florida hospital for treatment of mental illness. Under Florida statutes, a person may be admitted as a voluntary patient based on his " '[e]xpress and informed consent' " which is defined as " 'consent voluntarily given in writing after sufficient explanation and disclosure . . . to enable the person . . . to make a

knowing and willful decision.'" *Id.* at 123, 110 *S.Ct.* at 982, 108 *L.Ed.*2d at 112. Burch was admitted as a voluntary patient though his condition and behavior on admission could have supported an inference that he was not competent to make a knowing and willful decision regarding admission. He also executed consents to treatment. Burch remained at the hospital for five months, and during that time no hearing was held regarding his status.

Burch commenced an action under § 1983, alleging a deprivation of liberty without procedural due process, *i.e.*, the procedural safeguards available under Florida law utilized in cases of involuntary commitments. The district court dismissed the complaint for failure to state a claim, and the United States Court of Appeals reversed. The issue was whether the *Parratt* holding, that the availability of a postdeprivation remedy satisfied due process, applied to Burch's claim.

The Supreme Court rejected Burch's contention that *Parratt* applied only to deprivations of property. The Court ruled that the involvement of a deprivation of liberty "does not automatically preclude application of the Parratt rule." *Id.* at 132, 110 *S.Ct.* at 987, 108 *L.Ed.*2d at 118. The Court narrowed the issue to the following question: "whether predeprivation procedural safeguards could address the risk of deprivations of the kind Burch alleges." *Ibid.*

The Court answered the question in the affirmative. The Court noted that Florida statutes "do not direct any member of the facility staff to determine whether a person is competent to give consent, nor to initiate the involuntary placement procedure for every incompetent patient." *Id.* at 135, 110 *S.Ct.* at 988, 108 *L.Ed.*2d at 120. Because it is foreseeable that a person seeking treatment for mental illness might not be competent to consent to admission, the Court criticized the absence of a procedure to determine competency, and observed that, unlike *Parratt* and *Hudson*, there is a predictable point in the admissions procedure

when a deprivation of liberty will occur, if at all. *Id.* at 136, 110 *S.Ct.* at 989, 108 *L.Ed.*2d at 121. The Court concluded by stating:

Unlike Parratt and Hudson, this case does not represent the special instance of the ... due process analysis where postdeprivation process is all that is due because no predeprivation safeguards would be of use in preventing the kind of deprivation alleged.

[*Id.* at 139, 110 *S.Ct.* at 990, 108 *L.Ed.*2d at 122.]

The Court affirmed the reversal of the order dismissing Burch's complaint.[3]

The Court also found the *Parratt* rule to be inapplicable in *Logan v. Zimmerman Brush Co.*, 455 *U.S.* 422, 102 *S.Ct.* 1148, 71 *L.Ed.*2d 265 (1982). Logan had filed an employment discrimination claim with the Illinois Fair Employment Practice Commission (Commission). Under an Illinois statute, the Commission had 120 days to hold a factfinding conference, but the Commission's staff convened the conference five days beyond the 120 day period. The Illinois Supreme Court determined that the Commission's failure to comply with the statute deprived the Commission of jurisdiction to adjudicate Logan's claim and, therefore, rejected Logan's contention that termination of his claim, because of the Commission's failure to comply with the statute, violated his right to due process.

The United States Supreme Court determined that Logan's cause of action against his former employer was a constitutionally protected interest which could not be extinguished by the state without a hearing on the merits. The Court declared:

Logan's interests in retaining his employment, in disproving his employer's charges of incompetence or inability, and—more intangibly—in redressing an instance of alleged discrimination, are all substantial. At the same time, the deprivation here is final; Logan, unlike a claimant whose charge is dismissed on the merits for lack of evidence, cannot obtain judicial review of the Commission action. A system or

---

[3] Justice O'Connor dissented, joined by the Chief Justice and Justices Scalia and Kennedy. They believed that *Parratt* applied because the gist of Burch's complaint was that a wanton and unauthorized departure from established practice caused the deprivation. The dissent accused the majority of transforming that allegation into a challenge to the adequacy of Florida's admission procedures. *Id.* at 140–41, 110 *S.Ct.* at 991–92, 108 *L.Ed.*2d at 123–24.

procedure that deprives persons of their claims in a random manner, ... necessarily presents an unjustifiably high risk that meritorious claims will be terminated. And the State's interest in refusing Logan's procedural request is, on this record, insubstantial.

[*Id.* at 434–35, 102 *S.Ct.* at 1157, 71 *L.Ed.*2d at 277.]

The Court rejected application of the *Parratt* rule, though the employer contended that Logan was the victim of a negligent deprivation and, therefore, a postdeprivation remedy against the state for damages under the appropriate Illinois statute would satisfy due process. The Court distinguished *Parratt* on the ground that Logan's loss resulted from "the state system itself that destroys a complainant's property interest, by operation of law, whenever the Commission fails to convene a timely conference—whether the Commission's action is taken through negligence, maliciousness, or otherwise." *Id.* at 436, 102 *S.Ct.* at 1158, 71 *L.Ed.*2d at 278.

In the present case, the threshold issue is whether Baltarzuk's actions as a sitting member of the Board constituted random and unauthorized conduct within the *Parratt–Hudson* doctrine or whether they fall within the *Zinermon–Logan* orbit. The ordinance creating the Board complicates resolution of the issue. The ordinance establishes a five member Board, "of whom one (1) shall be a mobile homes park landlord and one (1) a tenant of a mobile homes park. The Chairman shall be chosen ... from among the nonlandlord/nontenant members." It could be argued that Baltarzuk's adversarial posture as a tenant representative is built into the rent adjustment scheme and, therefore, as in *Logan,* plaintiff's deprivation of due process was part of the "state" system. Thus, the deprivation would not be the result of a random and unauthorized act.

We reject the argument. Although the ordinance requires landlord and tenant representation on the Board, we are persuaded that the role of those special interest representatives, as established in the ordinance, does not include adversarial participation at the hearing or the presentation of, or reliance on, evidence gathered by them outside the record. The ordinance

specifies that the "Board shall give both the landlord and tenant reasonable opportunity to be heard before making any determination and shall base its determination on the reasonable, credible evidence before it," thereby precluding use of any outside information gathered by any Board member.

The role of the landlord/tenant representatives on the Board is analogous to the role of party-designated arbitrators sitting with a neutral arbitrator. Defining that role in *Barcon Associates v. Tri–County Asphalt Corp.*, 86 *N.J.* 179, 430 *A.*2d 214 (1981), our Supreme Court stated:

> While a party-designated arbitrator may approach the arbitration proceedings with some sympathy for the position of the party designating him, such an arbitrator must remain faithful to the obligation which rests upon him to maintain 'broad public confidence in the integrity and fairness of the [arbitration] process.' [Holtzmann, *The First Code of Ethics for Arbitrators in Commercial Disputes*, 33 *The Business Lawyer* 309, 312 (1977)]. Thus, *all* arbitrators should 'conduct the proceedings in an evenhanded manner and treat all parties with equality and fairness at all stages of the proceedings.' *Id.* at 316. Most important, arbitrators 'should decide all matters justly, exercising independent judgment, and should not permit outside pressure to affect the decision.' *Id.* at 317.
>
> [*Id.* at 190, 430 *A.*2d 214.]

*Accord American Eagle Fire Ins. Co. v. New Jersey Ins. Co.*, 240 *N.Y.* 398, 405, 148 *N.E.* 562, 564 (1925). These principles are especially applicable when the adjudicating body is a public agency.

We conclude that Baltazuk unilaterally assumed a role not authorized in the ordinance and that his behavior was random, not reasonably to be anticipated, and not pursuant to an established state procedure or custom. *See Lake Nacimiento Ranch Co. v. San Luis Obispo County*, 830 *F.*2d 977, 983 (9th Cir.1987), *cert. denied*, 488 *U.S.* 827, 109 *S.Ct.* 79, 102 *L.Ed.*2d 55 (1988) (*Parratt* rule applicable to due process violation occasioned by county supervisor voting in matter in which he had a conflict of interest); *Holloway v. Walker*, 784 *F.*2d 1287, 1291–93 (5th Cir.1986) (*Parratt* rule applicable to alleged conspiracy between trial judge and other litigants to deprive adverse litigants of their rights and property). As in *Parratt*, the state could not have provided a meaningful hearing designed to predict the behavior of one of the

Board members. *Logan, supra,* and *Zinermon, supra,* are, therefore, distinguishable. *Logan* involved the automatic loss of a claim, though the triggering act was a state employee's failure to adhere to the mandated time limits. The loss was the proximate consequence of adherence to a state procedural remedy regardless of the source of the delay. *Zinermon,* unlike the present case, involved a foreseeable deprivation at a point in time, admission to the hospital, where it was practical for the state to provide a mechanism to determine the competency of voluntary admittees. Plaintiffs reliance on *Gregg v. Township Comm. of Tp. of Hazlet,* 232 *N.J.Super.* 34, 556 *A.*2d 348 (App.Div.1989), is misplaced. The only issue this court addressed in *Gregg* was whether plaintiffs were entitled to counsel fees under § 1988 in light of a "conceded" violation of § 1983. *Id.* at 37, 556 *A.*2d 348.

We also conclude that New Jersey provides a meaningful postdeprivation remedy. In New Jersey, the actions of municipal agencies are subject to review in the Superior Court, Law Division, in an action in lieu of prerogative writs.[4] *See generally Alexander's v. Borough of Paramus,* 125 *N.J.* 100, 107–08, 592 *A.*2d 1168 (1991); *In re LiVolsi,* 85 *N.J.* 576, 592–94, 428 *A.*2d 1268 (1981). The trial court's review of the agency action is based on the record below, and the agency's determination is set aside if it is arbitrary, capricious or unreasonable, not supported in the evidence, or otherwise contrary to law. *See Reid v. Township of Hazlet,* 198 *N.J.Super.* 229, 486 *A.*2d 940 (App.Div.), *certif. denied,* 101 *N.J.* 262, 501 *A.*2d 931 (1985); *Green Acres of Verona v. Borough of Verona,* 146 *N.J.Super.* 468, 470, 370 *A.*2d 53 (App.Div. 1977); *see also, Harry's Village, Inc. v. Egg Harbor Tp.,* 89 *N.J.* 576, 587–88, 446 *A.*2d 862 (1982).

The review of agency determinations afforded in actions in lieu of prerogative writs is a more effective postdeprivation remedy

---

[4] The prerogative writs are *certiorari, quo warranto, prohibition* and *mandamus.* They were superseded by the New Jersey Constitution in 1947 which provided for "review, hearing and relief" in the Superior Court in lieu of the superseded writs. *N.J. Const.* art. VI, § 5, ¶ 4.

than the postdeprivation tort claims that were available to the plaintiffs in *Parratt* and *Hudson.* *See Anastasio v. Planning Bd. of Tp. of West Orange,* 209 *N.J.Super.* 499, 522, 507 *A.*2d 1194 (App.Div.); *certif. denied,* 107 *N.J.* 46, 526 *A.*2d 136 (1986). The tort remedy is indirect; it redresses the violation of a plaintiff's rights with a payment of money. The action in lieu of prerogative writs provides a direct remedy; it substantially restores the status quo by overturning the agency ruling that was the fruit of the due process deprivation. *See Holloway v. Walker, supra,* 784 *F.*2d at 1292 (right of appeal from determination of allegedly corrupt judge was an adequate postdeprivation remedy); *cf. Lake Nacimiento Ranch, supra,* 830 *F.*2d at 983–84 (action for damages under California statute where an official participates in a governmental decision despite his financial interest is an adequate postdeprivation remedy under *Parratt* ).

To recapitulate, Baltarzuk's actions were random and unauthorized, and the state provided an adequate postdeprivation remedy. Consequently, plaintiffs received all the process to which they were entitled and, therefore, defendant Board did not deprive plaintiff of due process. *Parratt, supra,* 451 *U.S.* at 544, 101 *S.Ct.* at 1917, 68 *L.Ed.*2d at 434; *Hudson, supra,* 468 *U.S.* at 536, 104 *S.Ct.* at 3205, 82 *L.Ed.*2d at 409.

On their cross-appeal, plaintiffs contend that the trial court erred in remanding their rent increase application to the Board instead of determining the rent increase issue in the Law Division. This contention is without merit. *R.* 2:11–3(e)(1)(E). Plaintiffs also contend that they are entitled to punitive damages for the § 1983 violation, a greater award of counsel fees, interest and other costs, and counsel fees generated by proceedings in the Appellate Division, including this appeal. In light of our determination that defendant did not violate § 1983, we need not address those issues.

The judgment against defendant for counsel fees and compensatory damages is reversed. The judgment remanding plaintiffs' application to the Board is affirmed.