286 N.J. Super. 222 (1995)
668 A.2d 1086
FREDERICK J. WATERS AND CAROL WATERS, T/A SHADY PINES CAMP GROUND AND TRAILER PARK, PLAINTIFFS-RESPONDENTS/CROSS-APPELLANTS,
v.
TOWNSHIP OF GALLOWAY, A NEW JERSEY MUNICIPAL CORPORATION, AND GALLOWAY TOWNSHIP COUNCIL AND UTILITIES DIVISION, A BODY POLITIC, DEFENDANTS-APPELLANTS/CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 13, 1995.
Decided December 27, 1995.
*224 Before Judges LONG, MUIR, Jr., and BROCHIN.
*225 Michael A. Pane argued the cause for appellants/cross-respondents (Michael A. Pane, attorney; Mr. Pane and Michael A. Pane, Jr., on the brief).
Christine M. Cote argued the cause for respondents/cross-appellants (Cooper Perskie April Niedelman Wagenheim & Levenson, attorneys; Steven D. Scherzer and Ms. Cote, on the brief).
The opinion of the court was delivered by MUIR, Jr., J.A.D.
This is an appeal from a $227,780 judgment entered against the defendants. The proceedings giving rise to the appeal are anomalous in that the trial court awarded damages without resolving a primary liability issue and then apparently based the damage award on a statute both parties agree is inapplicable.
In July 1989, plaintiffs filed a complaint in lieu of prerogative writs seeking both an order to compel issuance of a permit to construct a sanitary sewer system for their mobile home park and damages caused by the delays created by the refusal of the governing body[1] to issue the permit. Entitlement to proceed with construction of the sanitary sewer system centered on plaintiffs' need to secure site plan approval before proceeding with the upgrading of the mobile home park, which was a nonconforming use. In January 1990, the trial court, in a summary judgment setting, without resolving the site plan approval issue, directed the governing body to consider the permit application "based solely upon ... engineering concerns and standards [specified in sewer ordinance]." In the course of its determination, the trial court characterized the governing body's refusal to issue the permit as "political demagoguery."
*226 The need for site plan approval by the local Planning Board is not the only zoning issue relevant to plaintiffs' claim of entitlement to proceed with the upgrading of its nonconforming mobile home park. Plaintiffs rely on a Township Board of Adjustment resolution that determined they had a valid prior nonconforming use, see N.J.S.A. 40:55D-68, to claim entitlement to proceed with the improvements they proposed for the mobile home park. The trial court ruled the Board of Adjustment's determination immune from attack.
Notwithstanding the fact it had not resolved the need for site plan approval, the trial court proceeded in June 1993 with a damages only non-jury trial. The hearing resulted in the $227,780 judgment comprised of $177,780 in compensatory damages and $50,000 in attorney's fees. Not until it reached the issue of counsel fees, however, did the court identify any actionable basis for its damage award. At that point, the court stated:
To the extent that this would be regarded as a Section 1983 of 42 USC cause of action, there would be an entitlement to counsel fees under 42 USC 1988. The provision I rely on would be found in New Jersey Statutes 59:9-5. We're dealing with what amounts to a tort claim or tort action and as I alluded to before in 59:9-5, there is judicial discretion to award attorney's fees, ... "in any action brought against a public entity"....
....
So, 59:9-5 is the major legal reason on which I base my conclusions. There is no real common law on which to rely, other than, perhaps, a malicious prosecution type of analogy.
Thus, it would appear the trial court considered plaintiffs' cause of action as one sounding in tort and covered by the Tort Claims Act.
On appeal, defendants raise several challenges. They assert trial court error in finding the Board of Adjustment's ruling impregnable from attack; they argue the need for site plan approval precluded a finding of liability; and they contend, since no notice of claim was ever filed pursuant to the Tort Claims Act, N.J.S.A. 59:1-1 to 12-3, see N.J.S.A. 59:8-8, that Act could not serve as a basis for any liability requiring a vacation of the $227,780 judgment.
*227 Plaintiffs' appellate contentions disavow any entitlement to rely on the Tort Claims Act; understandably so, given the failure to file any notice of claim under the Act. See N.J.S.A. 59:8-3. Instead, they contend the trial court's "political demagoguery" statement, when viewed against the essentially uncontested facts, supports a 42 U.S.C.A. § 1983 claim for denial of substantive due process based on egregious governmental conduct. That conduct they find in the governing body's refusal to issue a permit to construct the sanitary sewer system for their mobile home park. They cradle their entitlement to the permit in contentions that the applicable ordinances required no site plan approval and that the Board of Adjustment ruling afforded them protection to proceed with their upgrading of the mobile home park.
The appeal, therefore, requires us to determine whether plaintiffs presented sufficient proof of a cause of action for substantive due process denial. It also requires us to rule on an issue left unresolved by the trial court  the need for site plan approval. And, in a more conventional context, it requires us to rule on the impact the Township Board of Adjustment ruling had on plaintiffs' denial of substantive due process claim.
We conclude plaintiffs failed to present prima facie proof of a denial of substantive due process. Plaintiffs' claim required proof they had complied with the sanitary sewer system ordinance and all other applicable laws. They fell short of that proof. They were not entitled to a final sewer permit until they applied for preliminary site plan approval, which they never did. They could not claim compensatory damages suffered as a result of the delay in the issuance of the final sewer permit because there could be no construction without final site plan approval. Moreover, we conclude the Board of Adjustment ruling did not, as plaintiffs seem to suggest, clothe them with the entitlement to proceed with sewer or other improvements to the mobile home park. Accordingly, we reverse and remand for entry of judgment in favor of the defendants. By so ruling, we need not address plaintiffs' cross-claim on the insufficiency of the damages awarded.

*228 I.

The case had its genesis in March 1959 when plaintiffs' predecessors in title to the Shady Pines Camp Ground and Trailer Park, Grover and Doris Lambert, obtained subdivision approval for forty mobile home sites and one hundred campsites. The one hundred campsites are not relevant here. Both the Township Planning Board and governing body approved the subdivision.
The record evidence relevant to those approvals is sparse. Only a terse excerpt from governing body meeting minutes and a copy of the approved map are provided. The map appears as follows:

Thereafter, on July 31, 1961, according to the record, the governing body enacted a zoning ordinance which prohibited "trailer coach parks" within the Township. The ordinance defined trailer coaches and trailer coach parks (the latter as a "plot of ground upon which two or more trailer coaches occupied for dwelling ... are located"). Then under Article VI, entitled "GENERAL REGULATIONS," the ordinance provided:
18. The following uses and activities are specifically prohibited in any and all zones in the Township of Galloway:
....
b. Trailer coach parks.
*229 There is no dispute this ordinance made the mobile home park a nonconforming use.
Plaintiffs purchased Shady Pines in October 1985. They did so intending to give it a "general face lifting."
They encountered a temporary setback. The Township Director of Public Works questioned the legality of the forty lots serving as a mobile home park based on the 1961 zoning ordinance amendment.
In an effort to resolve the issue, plaintiffs applied to the Township Board of Adjustment in February 1986 for an interpretation of the Township zoning ordinance to allow plaintiffs to continue "operating the premises pursuant to a valid, preexisting and nonconforming use." Plaintiffs made the application pursuant to N.J.S.A. 40:55D-70b. At the time, however, the Board of Adjustment had specific authority to issue, upon appropriate application, certificates that a use or structure validly existed prior to the ordinance making the use or structure nonconforming. See N.J.S.A. 40:55D-68 (L. 1985, c. 516, § 15, effective March 22, 1985).
At the Board of Adjustment hearing, the attorney for the plaintiffs read a statement of "facts" into the record. After noting the subdivision and registration of Shady Pines Mobile Home Park with the Township Clerk, the fact statement represented:
The premises were originally equipped and ... are still equipped with separate electric water hook-ups for each trailer lot together with individual septic tanks for each trailer. Since first beginning operation, the premises have been continually used as a trailer park although the number of trailers located thereon and the length of time each trailer has remained on the premises of course varied, depending upon the demand for trailer use at any particular time. This continuous use of the premises as a trailer park is evidenced further by representative quarterly reports of tax payments made to Galloway Township throughout the years in question and attached collectively as Exhibit B. As an example, the quarterly report for the quarter ending September 30th, 1964 shows a tax paid of $374.00 on sixteen trailers registered during that quarter. The use of particular lots during that period varied from between two to thirteen weeks. The quarterly tax report dated June 27th, '85 to the period of March 31st, '85 to June 29th, '85 illustrates $117.00 in tax paid for three trailers registered in that quarter. In this case, each of the registered trailers was present for the full thirteen-week period.
*230 Plaintiff Frederick Waters then swore to the truth of the facts. Waters did not state how he had personal knowledge about the mobile home park for the years prior to the 1985 purchase; and the Board did not, to any degree, explore the basis for that represented knowledge. Waters also represented that all forty lots were used during the period 1959 to 1985 and that he intended to make all forty lots permanent. He did not delineate the improvements he planned for the mobile home park. The record contains the tax payment records for certain lots from 1963 to 1984, but there is no correlation between the subdivision lots and the tax lot numbers.
In the absence of any public participation or opposition, the Board ruled plaintiffs' mobile home park a legal nonconforming use "as defined by N.J.S. 40:55D-68." Given plaintiffs' intent to upgrade the mobile home park and the fact they conceded site plan approval was required, the Board in its March 20, 1986, memorializing resolution added:
[T]his interpretation shall not infer in any manner that Applicants are not subject to currently applicable statutes, ordinances and regulations of the State of New Jersey, County of Atlantic and Township of Galloway, pertaining to the continued use of Applicants' property as a mobile home park.
The latter paragraph makes it clear the Board did not make any finding plaintiffs' proposed improvements were entitled to any protected nonconforming use status.[2]
Plaintiffs immediately went forward with plans for the upgrade of the mobile home park. As Frederick Waters later testified, the plans included a sanitary sewage disposal system tied into the municipal system, rather than individual septics for each mobile home lot; public rather than well water; underground television cable service and telephone line service; sidewalks; driveways; a "cul de sac" at the end with a park and construction of a new *231 gazebo; construction of porches and decks for mobile home lots; and installation of sod, water sprinklers, and shrubbery for the lots. Frederick Waters testified at the damages hearing that the foregoing work had been done but did not articulate the dates on which the work was done. He also did not state whether he sought or secured building permits for any of the work done.
After receipt of the Board of Adjustment resolution, plaintiffs engaged an engineer to design the sanitary sewage collection system for tie-in to the municipal system. The design included laterals, mains, and a sanitary sewage pumping station.
The Township Utilities Ordinance prescribes the format for a property owner to secure municipal approval to construct sanitary sewers. The ordinance sets a two-stage procedure: (1) preliminary application and review; and (2) final application and review. Both applications must be submitted to the governing body after approval by the Township Engineer. The preliminary application and review section of the ordinance provides:
The Township Planning Board will not grant preliminary approval on any development or subdivision prior to preliminary submission to the [governing body]. However, [governing body] formal approval is not required by the Planning Board until the Planning Board's final review phase.
The final application and review section provides:
The Township Planning Board will not grant final approval on a subdivision or development application prior to the receipt of a written certification of final approval ... from the [governing body].
The crux of the ordinance provisions is that preliminary sanitary sewer system construction approval has to precede preliminary Planning Board approval, when required, and final sanitary sewer system construction approval has to precede final Planning Board approval, when required. The ordinance, however, anticipates Planning Board approval where required. The Township land use control ordinance provides for both preliminary and final site plan approval in this instance, as we later note.
On October 25, 1988, the governing body, by resolution, gave preliminary approval to plaintiffs' sanitary sewer system project. The preliminary approval required satisfaction of items contained *232 in the Township Engineer's letter of review but was "[c]ontingent upon approvals from all other agencies having jurisdiction." The approvals from other agencies proved to be the fly in the ointment.
Initially, as they had before the Board of Adjustment, plaintiffs conceded they needed site plan approval from the Planning Board for upgrading their mobile home park. However, plaintiffs later reversed that position. That change in position occurred after a meeting of the Township governing body on January 24, 1989. At that meeting, armed with the Township Engineer's approval of the final mobile home sanitary sewer system construction plans, plaintiffs applied for the final sanitary sewer system construction permit. It was apparently the first notice to the public of plaintiffs' intention to upgrade the mobile home park and the first notice the governing body had of the plaintiffs' intent to upgrade and operate a forty-lot mobile home park. It was apparently also the first time the governing body became aware of the Board of Adjustment's resolution. Both the Mayor and governing body members expressed their concern for a mobile home development that involved greater concentration of use than anticipated by local land use regulations. When Frederick Waters explained the Board of Adjustment had agreed that Shady Pines was a legal nonconforming use, the Mayor replied:
[T]he council is, I guess, supreme council. We rule the township and they tell us what they want done, and right now, the council is denying you to have sewer. That's the only power we have. We have no power per se in the zoning board. That's an autonomous board. But the power we do have, sir, is the power to say no to sewer, and when we say no to sewer, ... it may be impractical and impossible for you to develop eight trailers on one acre of property.
The Mayor further explained that plaintiffs' application for final approval was being sent back to the Infrastructure Committee [a Planning Board committee] "because the interpretation that they received at the time was not the interpretation you were going to put 40 units in there on a fulltime [sic] basis."
Thereafter, a letter from the Township attorney clarified the governing body's position. The governing body saw site plan *233 approval, at least preliminary site plan approval, as a condition precedent to final approval for the sanitary sewer system and permission to construct it. It based its position on the "nature and extent of the work [plaintiffs] intend[] to do at the site."
Even after the January 24, 1989, meeting, plaintiffs maintained their willingness to apply for site plan approval. In a letter dated March 15, 1989, plaintiffs' counsel, after recognizing that at some point site plan approval had to be acquired, stated:
I have no difficulty applying first to the Planning Board [before pursuing final approval of the sanitary sewer system].
Two weeks later, plaintiffs sailed off in the opposite direction. Relying on their interpretation of the Township land use ordinance, plaintiffs concluded no site plan approval was required. In taking that position and in filing the complaint in this action approximately four months later, they eschewed the opportunity for ordinance interpretation under N.J.S.A. 40:55D-70b.
The parties fired the first of several courtroom salvos when each filed a motion for summary judgment directed at the validity and enforceability of the Zoning Board's resolution declaring plaintiffs had a nonconforming use for forty mobile home sites. Plaintiffs also sought a remand to the governing body to require it to review and render a decision on the sanitary sewer system construction permit. The trial court found plaintiffs' salvo more accurate.
As later embodied in an order dated January 12, 1990, the court ruled: (1) the governing body, on remand, was required to render its decision on issuance of the permit; (2) the Board of Adjustment nonconforming use was valid and not subject to further attack; (3) the failure to file the 1959 subdivision map (with the county recording office) was irrelevant to the mobile home park's nonconforming use status and the pending sanitary sewer system construction application; (4) no abandonment of the forty mobile home sites occurred; and (5) the intent to install sanitary sewer lines did not constitute an expansion of a nonconforming use.
In its accompanying oral opinion, the court gave its supporting rationale. It concluded: the Board of Adjustment resolution was *234 not subject to collateral attack "three years down the road" and "the references to [site plan] approval in the applicant's zoning board submission, as a matter of law, do not rise to a level of fraud or misrepresentation." It also found the Township governing body's conduct at the January 24, 1989, hearing "one of the worst examples of political demagoguery that [it had ever] seen." The court reserved the issues of site plan approval and damages for a later date. The record presented on appeal discloses it never resolved the former issue, although counsel for the plaintiffs argued it did in his opening at the damages trial.
On a motion to enforce litigants' rights that followed the order of January 12, 1990, the court dealt with the Township's resistance to considering final approval of the sanitary sewer system construction plan prior to site plan approval by the Planning Board. Finding plaintiffs "deserving" "after diligent endeavors to obtain the permit" but without reference to any sanitary sewer system ordinance provisions, the court directed the Township to resolve the sanitary sewer system construction permit application prior to resolution of the need for site plan approval. The governing body on March 13, 1990, by a split vote, acceded to the court's directive. The governing body at that meeting identified the procedure being followed as "precedent setting ... to give a prior approval for sewer prior to a planning board approval." While the comment did not identify the nature of Planning Board approval involved, preliminary or final, it suggests the governing body concluded the absence of any Planning Board approval went contrary to Township regulations.
With approval in hand, plaintiffs went ahead and constructed the sanitary sewer lines, main, and pumping station for the sanitary sewage disposal. They also constructed the planned improvements previously noted.
On June 2, 3, and 4, 1993, the trial court conducted a damages hearing. Despite the fact that the trial court had not ruled on the need for site plan approval, plaintiffs' counsel opened by telling the court:

*235 You may also hear that Mr. Waters needed site plan approval. Our response to that is threefold. First of all, the Court already made a ruling, site plan approval was not required, it's in the Court orders, it's out of the case. Secondly, Mr. Waters didn't need site plan approval, everything he did was proper. But most importantly, even if he did need site plan approval, no one stopped him from what he did. He constructed a cul-de-sac, no one stopped him. He repaired the street, no one stopped him. And most important of all, he started to put the trailers in.
We note parenthetically waiver or equitable estoppel cannot be relied upon by property owners to prevent a municipality from enforcing the need for site plan approval if the owners proceed with property development without required site plan approval. See, e.g., Gruber v. Mayor of Raritan Tp., 39 N.J. 1, 15, 186 A.2d 489 (1962); Bridge v. Neptune Tp. Zoning Bd. of Adjustment, 233 N.J. Super. 587, 597, 559 A.2d 855 (App.Div. 1989).
Defense counsel neither refuted the allegation of the court's having ruled on the site plan approval issue nor in any way challenged the lack of a plenary hearing on the issue of liability. Consequently, the record discloses little more than the trial court's "political demagoguery" conclusion as grounds for liability for the subsequently awarded damages.
During the course of the damages trial, plaintiff Frederick Waters detailed the work done to "upgrade" the mobile home park so as to make it amenable to sales of "state-of-the-art" mobile homes.
The trial court accepted the procedural status of the case alleged by plaintiffs' counsel that only the issue of damages remained. Perhaps through inadvertence due to the inordinate three-year delay, the court opened its opinion on damages with the statement, "[T]he liability issues having been previously dealt with by motion practice and, essentially, [it didn't] have to revisit liability...." The court then proceeded to arrive at the damages determination reflected by the judgment under appeal. In the course of resolving the claim for counsel fees, the court, as noted, relied upon N.J.S.A. 59:9-5 of the Tort Claims Act. The appeal and cross-appeal followed.

*236 II.

Substantive due process has emerged as the concept utilized to rectify governmental actions that wrongfully deprive a person of life, liberty, or property. It has served as the grounds for recognizing 42 U.S.C.A. § 1983 claims where plaintiffs have alleged governmental bodies refused to issue government-regulated permits for reasons unrelated to the merits of an application for such permits. See Lockary v. Kayfetz, 917 F.2d 1150, 1155-56 (9th Cir.1990) (allegation of arbitrary and irrational refusal of government to allow water hookups to public water supply stated a cause of action for a substantive due process violation); Bateson v. Geisse, 857 F.2d 1300, 1303 (9th Cir.1988) (arbitrary refusal to issue a building permit after applicant complied with all regulatory requirements constituted denial of substantive due process); Bello v. Walker, 840 F.2d 1124, 1129-30 (3d Cir.1988) (allegation of refusal to grant building permits for improper political reasons stated a cause of action for denial of substantive due process). See also Condor Corp. v. City of St. Paul, 912 F.2d 215, 220 (8th Cir.1990) (property owner may establish a substantive due process cause of action for denial of a real estate use permit where government action is so egregious and irrational that it exceeds standards of inadvertence and mere errors of law); Brady v. Town of Colchester, 863 F.2d 205, 215-16 (2d Cir.1988) (plaintiffs established entitlement to a plenary hearing, based on a claim of denial of substantive due process, on issue of irrationality and arbitrariness in the revocation of a building permit); Littlefield v. City of Afton, 785 F.2d 596, 607 (8th Cir.1986) (plaintiffs stated actionable 42 U.S.C.A. § 1983 claim for denial of substantive due process when they alleged city arbitrarily and capriciously denied a building permit); Scott v. Greenville Cty., 716 F.2d 1409, 1420-21 (4th Cir.1983) (plaintiff stated actionable claim for substantive due process violation when county council denied building permit despite entitlement to permit under South Carolina law).
The Bello court relied on Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), for its conclusion substantive due *237 process rights secure an individual from governmental abuse of power. Bello v. Walker, supra, 840 F.2d at 1128. Daniels dealt with a 42 U.S.C.A. § 1983 claim by a former City of Richmond jail inmate. The inmate claimed the Due Process Clause of the Fourteenth Amendment afforded him protection against the negligent conduct of a jail official that led to his injuries. The Supreme Court concluded the clause did not protect against negligent acts of officials causing unintended loss or injury to person, liberty, or property. Id. 474 U.S. at 328, 106 S.Ct. at 663, 88 L.Ed.2d at 666. In the course of doing so, however, the Court carefully distinguished intentional, deliberate conduct from negligent conduct. It noted that the guarantee of due process historically has been "applied to deliberate decisions of governmental officials to deprive a person of life, liberty, or property." Id. at 331, 106 S.Ct. at 665, 88 L.Ed.2d at 668. The Bello court relied on the deliberateness concept to undergird its recognition of a substantive due process claim for denial of the building permit application. Bello v. Walker, supra, 840 F.2d at 1128-30.
The pattern that arises from these cases is that, while there are various test standards applied on a case-by-case basis, there is one element essential to a prima facie case. The various tests applied all suggest the need for some degree of malice or other improper conduct on the part of the implicated government body or official. Case review suggests difficult occasions involve interests of different value, and the result depends on how concepts of due process are applied to the values at stake. Even though the cases espouse a variety of tests, i.e., arbitrary, capricious, egregious, or deliberate, they embrace a common element  the claimant must have a legitimate claim of entitlement to the permit denied. That premise evolves from Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972), where the Supreme Court held procedural due process protects a property interest when a plaintiff has a legitimate claim of entitlement to it. The legitimacy of entitlement, in instances relating to denial of building or other municipal permits, is based *238 on whether plaintiffs have complied with all legal requirements contained in the local codes or ordinances. See Bello v. Walker, supra, 840 F.2d at 1126; Bateson v. Geisse, supra, 857 F.2d at 1303; Littlefield v. City of Afton, supra, 785 F.2d at 602; Scott v. Greenville Cty., supra, 716 F.2d at 1418. Legitimacy of entitlement then is a prerequisite to a prima facie case of denial of substantive due process in cases of this nature.
Plaintiffs failed to establish a prima facie case. They failed to demonstrate entitlement to final approval for a permit to construct the sanitary sewer system. Their entitlement to the permit required, at least, preliminary site plan approval. They chose not to file for any site plan approval. Their entitlement also depended on the effect the Board of Adjustment's resolution had on their claim of right to proceed with the improvements. We conclude the resolution did not and could not serve as authorization to proceed with the improvements.

A.
The Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -129, empowers municipalities to enact ordinances that require site plan review and approval as a condition precedent to the issuance of a permit for development. N.J.S.A. 40:55D-37a. In addition to delineating the contents for a site plan ordinance, N.J.S.A. 40:55D-38, -39, -41, the MLUL defines "site plan," "development," and "structure." N.J.S.A. 40:55D-4, -7. Required site plans may be classified as major or minor. N.J.S.A. 40:55D-5. A major site plan must be reviewed in two stages, preliminary and final. N.J.S.A. 40:55D-46, -50. It is the local ordinance which prescribes the classification based on the scope of development. William M. Cox, New Jersey Zoning and Land Use Administration § 15-4 at 261 (1995).
Defendant Township enacted a site plan review ordinance that required site plan review in those instances where the property owners proposed improvement of property that fell within the MLUL definition of development. See N.J.S.A. 40:55D-4. The *239 ordinance, paralleling the MLUL development definition, made site plan review and approval mandatory for
the construction, reconstruction, conversion, structural alteration, relocation or enlargement of any building or other structure ... and any use or change in the use of any building or other structure or land or extension of land.
The ordinance also established the process for preliminary and final site plan review. See N.J.S.A. 40:55D-46, -50.
Plaintiffs' proposed upgrade of their mobile home park fell within the ordinance prescripts mandating preliminary and final site plan review and approval because plaintiffs contemplated construction of structures. The MLUL defines "structure" as "a combination of materials to form a construction for occupancy, use or ornamentation whether installed on, above, or below the surface of a parcel of land." See N.J.S.A. 40:55D-7. Here, not only did the sanitary sewerage pumping station and the sanitary sewer mains qualify as structures that constituted development but so did the water distribution lines, the underground conduit for telephone and cable television, the decks and porches for each mobile home, the gazebo, the cul-de-sac, the curbs, the sidewalks, and the driveways. These improvements, when viewed in their totality, required plaintiffs to apply for, at least, preliminary site plan approval prior to their submission for final approval of their sanitary sewer plans and the permit to allow construction. The utilities ordinance identified preliminary site plan approval as a step in the process of securing final sanitary sewer system construction approval. Plaintiffs were not entitled to final approval of their sanitary sewer plans and specifications until they had secured preliminary site plan approval. They were further not entitled to proceed with the "upgrading" of the mobile home park until they had final site plan approval. Their failure to comply with all the requirements of the applicable Township ordinances precludes an actionable claim for denial of substantive due process.

B.
The zoning ordinance of 1961 abolishing trailer coach parks (mobile home parks) as permitted uses and the Public Works *240 Director's questioning of plaintiffs' projected use of their mobile home park dictated the need for the issuance of a certificate of a valid prior nonconforming use by the Board of Adjustment if plaintiffs were to be able to proceed with their plans. Plaintiffs mislabeled their application. It should have been submitted under N.J.S.A. 40:55D-68. See Poulathas v. Atlantic City Zoning Bd. of Adjustment, 282 N.J. Super. 310, 312, 660 A.2d 7 (App.Div. 1995); Cronin v. Township Comm. of Chesterfield Tp., 239 N.J. Super. 611, 618, 571 A.2d 1354 (App.Div. 1990). Apparently, neither plaintiffs nor the Board of Adjustment were aware of the then-recent amendment of N.J.S.A. 40:55D-68 authorizing the issuance of a certificate of prior nonconforming use in appropriate circumstances. Although the Board's resolution is not characterized as a certificate, we review the effect of the Board's resolution in the context of the latter statute.
During the growth of the law on zoning, nonconforming use took on a common law definition.
Historically, a nonconforming use has been looked upon as "a use of land, buildings or premises that lawfully existed prior to the enactment of a zoning ordinance and which is maintained after the effective date of such ordinance even though it does not comply with the use restrictions applicable to the area in which it is situated." 6 R. Powell, The Law of Real Property ¶ 871 (Perm. ed. 1979).
[Town of Belleville v. Parillo's, Inc., 83 N.J. 309, 315, 416 A.2d 388 (1980).]
That concept, a protection against compulsory limitation on prior nonconforming uses, is embodied in the MLUL under N.J.S.A. 40:55D-68 and defined by N.J.S.A. 40:55D-5.
The statutory guarantee against compulsory limitation is well circumscribed. See Town of Belleville v. Parillo's, Inc., supra, 83 N.J. at 315, 416 A.2d 388. Continuance of a nonconforming use is restricted to "substantially the same kind of use as that to which the premises were devoted at the time of the passage of the zoning ordinance." Id. at 316, 416 A.2d 388. Where there is doubt as to whether a change is substantial or not, courts constantly have declared that it is to be resolved against enlargement or change. Ibid.
*241 Based on these principles, the Board of Adjustment's authority to issue a certificate of a valid preexisting nonconforming use for plaintiffs' premises extended only to the use in effect at the time of the 1961 zoning ordinance. Although the Board was presented with evidence that extended to well after 1961, it was without authority to rule the mobile home park had a preexisting nonconforming protected status for substantial changes at the mobile home park that occurred after the effective date of the 1961 zoning ordinance. Consequently, while we do not find it necessary or constructive to explore the detail of the proofs before the Board in 1986, we hold that the Board's valid preexisting nonconforming status ruling did not afford plaintiffs with any entitlement to rely on that ruling to sustain a claim of entitlement to the sewer permit at the heart of this litigation.
In doing so, however, we reject defendants' argument the Board's decision should be overturned due to the prior owners' failure to file their subdivision map with the county recording officer as provided for by the then-applicable, now repealed, N.J.S.A. 40:55-1.18. At the time of the subject subdivision approval, subdivision meant division of land for sale or building development. See N.J.S.A. 40:55-1.2 (now repealed). There is no suggestion in the record the owners of the mobile home park intended to sell, or construct any buildings on, the forty lots of the mobile home park. Indeed, the informality of the subdivision map would suggest to the contrary. It would suggest the owners sought only a forty-lot layout on the entire parcel they intended to retain. The informality of the map discloses the map could not have been recorded with the county recording officer. See N.J.S.A. 46:23-9.11 and its predecessor legislation. Certainly, Township officials participating in subdivision approval decisions would have required a more detailed, engineer-developed map had the owners suggested an intent to sell or build on the separate lots. While today we may look with sophisticated hindsight at the conduct of planning boards operating in the early 1960s, we must not lose sight of the fact that zoning still was in its infancy for *242 many communities. Moreover, we also must not lose sight of the fact that, while the Municipal Planning Act of 1953, N.J.S.A. 40:55-1.1 to -1.29, prescribed authority for enactment of land use subdivision ordinances and did not specifically authorize site plan approval, municipalities were deemed to have site plan approval authority. See Kozesnik v. Township of Montgomery, 24 N.J. 154, 131 A.2d 1 (1957). Viewed in that light, we find it inappropriate to undermine the Board of Adjustment's resolution based upon the 1959 failure to file the subdivision map. Consequently, and without consideration of the fact defendants' challenge to the Board's action suffers from lack of timeliness, see R. 4:64-6, we find no basis for overturning the Board of Adjustment's resolution. At the same time, however, we conclude the resolution did not provide a foundation for any entitlement to the permit for construction of the sanitary sewer collection system.
We reject plaintiffs' contentions to the extent they suggest the contrary. The proposed improvements, as we have ruled, constituted a plan for development. If plaintiffs sought approval of their plan before the Board of Adjustment, they not only were required to give public notice of the hearing on their application, see N.J.S.A. 40:55D-12, but they also had the burden of proving those improvements did not constitute an expansion of the nonconforming use. See, e.g., Town of Belleville v. Parillo's, Inc., supra, 83 N.J. at 315-16, 416 A.2d 388. Simply put, the Board's determination gave no imprimatur of validity to the improvements plaintiffs proposed for their mobile home park.

III.
In sum, we conclude plaintiffs failed to establish an actionable claim for denial of substantive due process and the damages authorized by 42 U.S.C.A. § 1983. Plaintiffs were not entitled to a permit to construct the mobile home park sanitary sewage collection system due to their failure to apply for and secure preliminary site plan approval. Even so, armed with the permit they could not proceed with completion of the improvements until they *243 had final site plan approval. Moreover, the Board of Adjustment resolution did not afford them entitlement to install any improvements; it simply recognized the 1961 existing mobile home park as a legal nonconforming use. The lack of site plan approval and limited scope of the certificate of prior nonconforming use did not afford plaintiffs entitlement to the permit the trial court found improperly denied nor to the damages plaintiffs claimed were caused by the delay in issuing the permit.
We make one final comment. Due to the fact it was not raised, we do not address the issue of whether plaintiffs' federal civil rights claim is not cognizable due to adequacy of a state law remedy. See Rivkin v. Dover Tp. Rent Leveling Bd., 277 N.J. Super. 559, 569-70, 649 A.2d 1356 (App.Div. 1994).
Accordingly, we reverse and remand for entry of judgment in favor of defendants.
NOTES
[1] Plaintiffs have named the Township Council and Utilities Division as a defendant. A Township Municipal Utilities Ordinance created a Municipal Utilities Division, a division of the Township Council, to act on all permits authorized by the ordinance. For the sake of brevity, we employ the term "governing body" to refer to that Division.
[2] In early 1989, plaintiffs sought another "interpretation" from the Board of Adjustment. The "interpretation" sought was whether the March 1986 resolution extended to the sale of mobile homes from the site. The Board denied the application on grounds it was an expansion of a nonconforming use and required a use variance. That decision is not at issue on this appeal.